Hitchcock, J.
The first item of claim by the state in this case is the sum of $97.76, being four per cent, on' two dividends declared in 1825, upon stock standing in the name of William Neil, but which was holden by him merely in trust for the bank, having been received by the bank in payment of debts. The amount of these dividends thus made upon the stock of the bank was $2,444. Had the case stopped here, no reason is perceived why the state would not have been entitled to the amount claimed. But it is shown that these dividends were carried to the general account of profit and loss, and subsequently divided, and that upon such subsequent dividend, the tax of four per cent, was paid to and received by the state. It having been once paid, it is not seen upon, what principle of law or equity payment can be again required.
The second item of claim is the sum of $47.66, upon a dividend made by the bank on May 1, 1831, of $5,719.60. Hpon this dividend the bank paid a tax, estimating the same at the rate of four-per cent, up to the 1st of April of that *year, and at five per [94-cent. from the 1st of April to the 1st of May, when the dividend was declared. This mode of computation was acquiesced in by the then officers of the government, but as the object of the parties seems to be to obtain the opinion of the court upon the point of law, it is not claimed that this acquiescence is binding upon the' *95 state. It is insisted, on the part of the state, that, by the law taxing banks, she was entitled to five per cent, on this dividend. The decision of the question depends upon the construction of the act of March 12, 1831, to tax banks, insurance, and bridge companies.. 29 Ohio L. 302.
Previous to the passage of this act, by the law of February 1825, a tax of four per cent, was levied upon all subsequent dividends of banks. 2 Chase’s L. 1463. Th.is law continued in force until March 12, 1831, when another act upon the same subject was passed. This law of 1831 not only levied a tax upon banks, but upon bridge and insurance companies. By its provisions,-the board of directors of every bank, insurance, or bridge company are required, by the 1st day of October then next, to cause to be transmitted to the auditor of state a correct statement of all div-, idends made by such bank, insurance, or bridge company at any time after the 1st day of April then next; “ and a statement of each and every subsequent dividend made or declared by such coi'poration, made out, signed,” etc., “ shall be forwarded to the auditor of state within ten days after such dividend shall have been made,” And the auditor of state, on receiving such statement, is directed “ immediately to draw on such corporation in favor of the treasurer of state for the amount of five per cent, computed on the dividend so certified.” In the second section, it is enacted that if any of said companies shall refuse to make such-statement as is required, or shall refuse or neglect to pay any draft drawn by the auditor of state, for the amount of tax due to the ■state, such company shall forfeit and pay any sum, not exceeding. •$1,000, to be recovered by action of debt in the name of the State* of Ohio, There is no room in the phraseology of the act, so far 95] *as the amount of tax is concerned, for construction. Upon* all dividends declared subsequent to the 1st day of April after .the passage of the act, this amount is five per cent. 29 Ohio L. 302. The dividend in the case under consideration was declared •on the 1st day of May. By the terms of the law then, it was subject to this tax of five per cenL On the part of the defendants, it is urged that the object being to tax the profits of banks, and .as, up to the 1st of April, the tax on these profits .was four per cent., therefore, it was proper to compute at this rate so long as .the former law remained in force, and to compute at the rate of five per cent, from the time the new law took effect. There is no doubt. *96 that under both laws the object was to tax the profits, but under neither law did the tax attach nor become due until these profits were divided, The tax is upon the dividends of bank, insurance» and bridge companies. And although at the time a dividend may be made, there are large surplus profits remaining on hand, these profits are not taxed. And should they be counterbalanced by losses, before another semi-annual dividend, the state would derive no revenue from them.
■The only doubt, it seems to me, which can arise under this statute, grows out of the proviso to the repealing section. That proviso is in these words: “ That all banks and insurance companies, from which there may be due any taxes, or any per centum on undeclared dividends, on the 1st day of April next, shall be chargeable for the same, and account therefor, in the statements which they are required to make, to the auditor of state, by the provisions of this act.” And here the only difficulty is as to what is meant by “ undeclared dividends.” The only sensible construction which can be given to the phrase is, that it refers to dividends in fact made, but not declared or published. This proviso was introduced from abundant caution. As the former law was repealed, it was done for the purpose of declaring that taxes already due should not be thereby remitted, but should be drawn for by the auditor, as other taxes were to be drawn for under the act then passed,
*Upon a careful consi deration of the subject we are brought [98. to the conclusion, that under the act of 1831, the defendants were bound to pay to the state a tax of five per cent, upon the dividend of May of that year, and that there is, therefore, a balance of. 847.66 "due, as claimed by the plaintiff.
We are next brought to the consideration of the claim preferred by the defendants. This is, to have refunded to them the sum of 8508, improperly drawn from them by the auditor of state, as a tax of five per cent, upon a premium of 810,160, received upon the sale of bank shares, upon an increase of the capital stock of the bank. This increase and.sale took place previous to May, 1832, and was reported to the auditor on the 10th day of that month. We are here met by the objection, that this payment having been voluntarily made, the defendants would not in an ordinary case have any legal right to recover it back. Had this objection been persisted in, there might perhaps have been some difficulty in the case. If the draft for this per centum was improperly drawn, the *97 defendants were certainly under no obligation to pay. But still the penalties imposed by the law for not paying a draft properly drawn, are perhaps such as to justify us in holding that this could not be considered strictly as a voluntary payment. It would seem that the bank never intended to acquiesce in the propriety of the demand made for a tax upon this premium. But we are relieved from any difficulty on this account. Although the objection is suggested, the counsel for the state very properly, in effect, waive any advantage that might be derived from it, and submit to the court the naked question, whether this premium was, under the law, a proper subject of taxation.
If this premium, as distributed among the old stockholders of the bank, comes properly within the meaning of the term dividend, as used in the statute, then it was subject to the tax. By the act of February 23,1816, “ to incorporate certain banks therein named, and to extend' the charters of existing incorporated banks,” 2 Chase’s L. 913, it is provided in section 27, “ that the dividends 97] of the profits of each of said corporations, *or as much thereof as shall be deemed expedient and proper, shall be declared half-yearly on the first Monday in May, and November, in each year; the amount of said dividends shall be determined from time to time by the president and directors of each corporation, in a meeting held for that purpose,-and shall in no case exceed the amount of net profits actually acquired by the corporation, so that the capital stock shall never be impaired by dividen Is.” By this provision it is manifest that it is the profits of the business, carried on by the corporation, which is to be divided. The profits made by the use of the corporate property. And it is upon these dividends that the law already cited, to tax banks, insurance and bridge companies, is intended to operate. This tax is to be paid by the bank out of the corporate property, and not by the several stockholders, after the profits shall have been divided.
The question then arises, whether bank shares, or, in common parlance, bank stock, is corporate property, and whether they constitute a part of the capital stock of the bank. There may be some difficulty in drawing the line of distinction between what is, and what is not, corporate property. As a general rule, however, that property which is under the control of the corporation, or which may be sold for the payment of its debts, is corporate property. It is true, that in this property all the members of the *98 corporation have an interest; but it is a joint interest, and they have no control over it, except in the manner specified in the act of incorporation. Money paid in upon a bank share, or, in other words, upon a share of bank stock, becomes corporate property, and may be disposed of in payment of the debts of the corporation, or in any other legitimate way.' So lands or any other property received in payment of debts become corporate property, and, if sold at an enhanced price, there is so much addition to the profits of'the business. So bank shares may, by an individual stockholder, be transferred to the bank in payment of a debt, and when so transferred, become the property of the corporation, and, it is believed, that this is the only legitimate way in *whieh [98 a banking corporation can, as a corporation, become interested in its own stock. And even the propriety of this mode of acquiring property in stock has been seriously questioned. But the corporation has no control over the shares of its stock belonging to its individual .members, unless it be as to the mode of transfer. These shares can not be appropriated to pay the debts of the corporation. They are as much the individual property of their holder, as are his houses or his lands. If this stock is above par value in the market, it is the gain of the stockholder, and not of the corporation. If it is below par, it is the loss of the stockholder. The value of stock, it is true, will depend upon the condition of the corporation, but the corporation, so far as its own property is concerned, is not affected by that value.
If there could be any doubt upon this subject, it must be removed upon an examination of the laws incorporating the banks of this state. Take, for instance, the law before referred to, incorporating certain banks, etc. (2 Chase’s L. 930), by virtue of which the Franklin Bank of Columbus is incorporated. The first section provides, that “a bank shall be established at Columbus, in the county of Franklin, and those who shall become stockholders in the said bank in the manner hereinafter prescribed, their successors and assigns, shall be and are hereby created a body corporate and politic, by the name and style of the president, directors, and company of the Franklin Bank of Columbus.” Those who should afterward become stockholders would constitute the corporation, and the interest of each stockholder in the common property of the corporation, would depend upon the number of shares of stock which he might hold. In section 7 it is pro *99 vided, that the capital stock of the bank shall consist of $100,000, to be divided into 1,000 shares of $100 each. By the same section, commissioners are appointed to superintend the subscriptions of stock, who are to have the management of the concern until the corporation is organized by a choice of officers. By section 9 it 99] is provided, that so soon as 600 *shares are subscribed, it shall be lawful for the bank to commence business. It will be seen from this that the subscription of stock preceded the organization of the corporation, and that the shares of stock are different from the capital stock itself. This capital stock is, in fact, the amount paid in upon the shares subscribed. By section 30 of the act, provision is made “that the stockholders in each of said banks may, at any time hereafter, augment the capital stock of the bank in which they may be stockholders, to any amount not exceeding $500,000, at a special meeting called for that purpose; two-thirds of all the votes being given therefor, under such regulations, restrictions, and conditions as they shall at such meeting judge proper. The stock being thus increased, would no more belong to the corporation than would the stock originally created. Before there could bo any increase there must be a general meeting of the stockholders, and a vote of two-thirds of those present in favor of the measure. Such increase would be an increase of the amount of capital upon which these stockholders, as a corporation, had been doing business. And as they had an interest in the original capital stock, in proportion to the shares by them severally holden, so they would have an interest in this increased capital. They might either retain the increased shares of stock themselves, upon the payment of such installments as might be called for, or they might direct the bank to dispose of them upon such terms as they thought proper. In the ease before the court, this latter mode was adopted. It is admitted by counsel, if the original stockholders had apportioned this stock among themselves, as they well might have done, and then transferred it to others, that the state could have had no claim in consequence of the premium. If so, and in this we agree with counsel, we do not perceive how the state can have any .claim when the bank, in its corporate capacity, has sold this stock for the stockholders, who were its legitimate owners.
This premium was not divided among the stockholders, as ordinary profits are divided. It was distributed among- those *100, 101 .*who had been stockholders at the time the capital was in- [100 creased, and was in effect the same as a price paid to them by those who purchased the new stock, for the privilege of coming into what was considered to be a profitable concern. In any view which we can take of the case, it seems to us that the tax upon this premium was improperly demanded, and, that having been paid, it should be refunded.
Such being the opinion of the court, we are requested to render • judgment against the state for the balance due. This we can not do. But under the agreed case we are authorized to set off so .much of this amount which is due from the state to the bank, as will be sufficient to balance the claim $47.66, which is done accordingly.