THE STATE OF NEBRASKA, APPELLEE, v. THE SIOUX CITY
AND PACIFIC RAILROAD COMPANY, WILLIAM F. MANN-
ING, JOHN I. BLAIR, MOSES TAYLOR, JOHN B. ALLEY,
AND WILLIAM F. WELD, APPELLANTS.

1. **State Grant of Lands to Railroad Company.** Where
a railroad company has received a grant of land from the state,
upon condition that it would build a railroad from one town to
another, it has no authority whatever afterwards to abandon any
portion of such line and take up and remove the track. The
unprofitableness of operating the road furnishes no excuse what-
ever for a failure to comply with the conditions of the grant.

2. ———: DUTY OF THE COMPANY. A railroad company in ac-
cepting a grant from the state, thereby enters into a contract
with the state, to build and maintain its line, and operate the
same, and the state may enforce the contract by mandamus or
other appropriate proceeding.

3. **Action to Quiet Title to Real Estate.** Independently of
the statute to maintain an action to quiet title, the plaintiff
must, *first*, have been in possession for some considerable time,
and it must appear that his rights are contested by numerous
parties; or, *second*, the plaintiff must have established his right
by numerous trials at law, and is nevertheless in danger of
further litigation by parties who controvert that right.

4. ———: WHO MAY BRING. A party not in actual possession, in
order to maintain an action to quiet title to real estate, must
have the legal title to the same.

5. **Grants:** PATENT BY GOVERNOR OF THE STATE. A patent
issued by the governor in pursuance of an express grant, is not
void upon its face, and passes the legal title to the property
therein granted. It may be impeached for fraud, or set aside
for other sufficient cause, but cannot be assailed collaterally.

THIS was an appeal from a decree rendered in favor of
plaintiff by POST, J., sitting in the district court for
Dodge county.

The case was to quiet title to certain lands, to have
declared null, and to cancel of record a certain patent
executed by David Butler, governor of plaintiff, Decem-

ber 2d, 1869, granting to the Sioux City and Pacific
Railroad Company certain lands in Dodge county, under
and by virtue of the act of the legislature, entitled " An
act to donate seventy-five sections of the public lands of
the state to the Northern Nebraska Air Line Railroad
Company," under consolidation of that company with
the railway company defendant. Prayer as above indi-
cated, and for other, further, or different relief. The
defendants impleaded with the railway company are its
grantees of portions of the lands.

The record brought to this court is very voluminous,
and a statement of the facts sufficient to an understand-
ing of the points decided, beyond that expressed in the
opinion, is not deemed necessary.

*J. M. Woolworth* and *E. Wakeley*, for appellants.

I.   The act of June 20, 1867, makes a present grant
of the lands to the Northern Nebraska Air Line Railroad
Company upon conditions subsequent:

1.   If this question were to be determined upon the
terms of the first section of the act it is not open to dis-
cussion. Those terms import a present grant. Omitting
the descriptive words as immaterial to the inquiry, they
are as follows: " Seventy-five sections of the public
lands   *   *   *   be, and the same is hereby appropri-
ated and donated to the Northern Nebraska Air Line
Railroad Company." *Rutherford v. Green's heirs*, 2
Wheat., 196. *Strong v. Lehmer*, 10 Ohio St., 93. *Han-
nibal v. Moore*, 37 Mo., 338. *Foley v. Harrison*, 15
How., 447. *Doll v. Meador*, 16 Cal., 296. *Branch v.
Mitchell*, 24 Ark., 431. *Johnson v. Ballou*, 28 Mich.,
379. *Busch v. Donohue*, 31 Ill., 481. *Railroad Co. v.
Smith*, 9 Wall., 95. *Veeder v. Guppy*, 3 Wis., 502.
*Little v. Watson*, 32 Me., 214.

2.   But it is insisted that other clauses qualify these
terms of present grant, and their true meaning and

effect is to be ascertained from a survey of the whole act. It devolves upon the plaintiff to point out where and in what words these terms are so qualified as to convert them from their natural and obvious meaning into terms simply conferring an authority to convey upon a subsequent event. *Johnson v. Ballou,* 28 Mich., 377, 380. *Schulenberg v. Harriman,* 21 Wall., 44, 62.

3. And the terms of section five of the act clearly imply a present grant. That section provides that if the road be not commenced within a limited period, and be not completed within another limited period, "*the grant shall be void,*" "*and this grant is made upon the condition,*" etc., "*and if this grant is accepted by the company,*" etc.

4. The fact that patents were to be issued does not have the effect to qualify the terms of the grant. *Langdeau v. Hanes,* 21 Wall., 521. *Thorndike v. Richards,* 13 Maine, 430. *Central Pacific Co. v. Dyer,* 1 Sawyer, 641. *McShane v. Railroad,* 22 Wall., 444.

II. This action in equity cannot be maintained, because it is brought to enforce a forfeiture of the conditions subsequent. No rule of equity jurisprudence is better settled than that "courts of equity will never aid in the diverting of an estate for the breach of a covenant on condition subsequent." 2 Story's Eq. Jur., Sec. 1319. *Horsburgh v. Baker,* 1 Peters, 232, 236. *Livingston v. Thompkins,* 4 John Ch., 413. 4 Kent's Comm., 123–8. *Warner v. Bennet,* 31 Conn., 468–478. *Livingston v. Stickles,* 8 Paige, 398.

III. It was not competent for the attorney general to declare the forfeiture. That power was vested in the legislature alone, which had made the grant and annexed the condition. Until the declaration of forfeiture by the proper authority, a suit to enforce it cannot be main-

tained. *Schulenburg v. Harriman*, 2 Dill., 398 S. C. on Appeal, 21 Wall., 63.

IV. This action was premature. The grant was made June 20, 1867, and gave seven years to build the road, which was to June 20, 1874. The action was brought May 21, 1874.

V. The case alleged in the pleadings and insisted upon at the bar on behalf of the state is that the patents are void on their face—not voidable by the state at its pleasure, but absolutely void; not to be shown to be void by extraneous matter, but appearing to be void upon a simple inspection. If this be the correct view, the remedy was at law, and not in equity. *Sherman v. Buick*, 93 U. S., 209. *Patterson v. Tatum*, 3 Sawy., 164. *Stoddard v. Chambers*, 2 How., 284. *Bissell v. Penrose*, 8 Id., 317.

*George H. Roberts*, Attorney General, *J. R. Webster*, and *T. M. Marquett*, for the State.

THIS action is not to enforce a forfeiture, but to have decreed null a patent issued improperly and without authority, which is and ever was incapable of vesting an estate, but under which the defendants set up a claim of ownership of the plaintiff's lands. If the patent was issued before the grantee was entitled thereto, or was issued to an improper party, the plaintiff has an interest in obtaining its cancellation. Then, if the grantee can show itself entitled at any time within the term limited, it may present its proofs, and demand and enforce its rights. And for answer to the appellant's fifth point, we say the proceeding is statutory—it is evident the defendants *claim* an interest in these lands adverse to the plaintiff. The Sioux City and Pacific Railroad

Company claims to have, and has what purports to be, a patent of the state conveying its title to the company, and the other defendants claim title to some of these lands through the patent by grant from the company. The case exactly falls within the provisions of section one, page 882, General Statutes, of the act of February 24, 1873, and is therefore properly brought.

I.  The act was not a grant *in presenti*, but upon conditions precedent.  The conditions in a public grant in aid of a private party or private enterprise, naming anything to be done as a condition, are always held to be conditions precedent, some using the expression that the public reserves the remedy in its own hand.  *Douglas Co. v. U. P. R. R.*, 5 Kan., 615.  *State v. Kirkwood*, 14 Iowa, 162, 168.  *Des Moines v. Polk Co.*, 10 Iowa, 1.  *Cedar Rapids v. Woodbury*, 12 Iowa, 537.  29 Iowa, 247.  *R. R. Co. v. Prescott*, 16 Wall, 604.  *U. P. R. R. Co. v. McShane*, 22 Wall, 444, 462–3.  *Rice v. R. R. Co.*, 1 Black, 359.  *White v. B. & M. R. R. Co.*, 5 Neb., 383–95.

II.  It is to be observed that the grant was to the grantee company to aid in the construction of its line of road, to aid a road between fixed and named *termini;* and upon the consideration of a continuing and perpetual obligation relative to the transportation of the freight of the state.

1.  No road was completed from De Soto to Fremont. There was no legal compliance with the condition for the construction of a road between those *termini*, as is conclusively shown by the proofs and as is admitted by the pleadings.  Two fragmentary lines or reaches, over which by connections and transfers communication can be effected, do not constitute a *line of road*, especially when one is a mere adjunct to the line over which traffic

passes without reaching or passing through one of the named *termini*. Why the donor named and fixed the *termini* is not to be inquired. It is sufficient that it did so. The two reaches did not make the line aided, and was no compliance with the condition of the construction of a road from De Soto to Fremont. *Carlisle v. T. H. & Ind. R. R. Co.*, 6 Ind., 316, 18–19. *Marsh v. Fulton Co.*, 10 Wall., 676, 683. *St. Joe & D. C. R. R. v. Commissioners*, 10 Kan., 579.

2. The state gave these lands to one company named, to aid the construction of a definite line of road, upon a continuing construction named. Under cover of consolidation proceedings another company used the lands to aid other purposes, for the carrying out of which it was already possessed of ample and surplus means.

3. The consolidation and obtaining of the grant was a diversion of the grant from its purpose and a fraud upon the state. Instead of getting an additional road by its aid, it got none by its aid, and none between the *termini* named. There was no compliance legal or equitable.

MAXWELL, J.

In the year 1864 the Sioux City and Pacific Railroad Company was incorporated under the laws of Iowa, for the purpose of constructing, maintaining, and operating a railroad from Sioux City, Iowa, to such point on the Union Pacific Railroad as might thereafter be selected. The time at which the company commenced the construction of the road does not appear in the record, nor does it appear from what point the construction was commenced and prosecuted.

In the year 1867 the legislature of this state passed an act, section one of which provides: "That seventy-five sections of the public lands granted and donated to this

state by the United States, for the purpose of internal improvement, as provided in the eighth section of the act of Congress of the fourth of September, 1841, be, and the same is hereby, appropriated and donated to the Northern Nebraska Air Line Railroad Company for the purpose of aiding in the construction of the road of said company, which said railroad is to commence at De Soto, in Washington county, and terminate at Fremont, in Dodge county."

Section two provides that: "The governor, secretary of state, and auditor shall select and set apart for the use of said railroad company seventy-five sections of land," etc.

Section three provides that: "The lands selected shall not be otherwise disposed of than is provided" in the act.

Section four provides: "Whenever a section of ten miles shall be completed on said railroad the company shall be entitled to receive from the state, patents for twenty sections of land selected as aforesaid; and on the completion of each subsequent section of ten miles, patents shall be issued to said company for a like quantity of land selected as aforesaid, and on completion of the said road patents shall be issued for the remainder of the seventy-five sections of land not patented as aforesaid."

Section five provides: "The said road shall be commenced within three years, and be completed within seven years from the passage of this act, otherwise this grant to be void. And this grant is made upon the condition that the said company shall never charge or receive any sum whatever for any freight transported over the said road for this state. And if this grant is accepted by the said company it shall be with the condition hereinafter expressed and limited."

Section six provides: "This act may be amended or

repealed at any future session of the legislature, held previous to the delivery of the lands to said railroad company."

The act was approved June 20, 1867.

On the seventh day of June, 1867, the "Northern Nebraska Air Line Railroad Company" was organized under the general laws of the state, and adopted its articles of association, most of the members of the company being residents of De Soto. The articles were duly recorded in Washington and Dodge counties, and in the office of the secretary of state, and were published in a newspaper in the city of Omaha, in December of that year. At a meeting of the association held in the city of Omaha, on the twenty-second day of June, 1867, John S. Bowen was elected president, Henry P. Beebe vice-president, Jesse T. Davis secretary, and James S. Stewart treasurer. No election of officers appears to have taken place in the fall of 1867. No money was paid by the stockholders at the time of the organization of the company, nor until about a year thereafter.

It appears that the members of the Air Line Company were endeavoring for at least a year after the organization of the company, to induce those engaged in the construction of railroads, or some railroad company, to accept the grant and construct the road. John S. Bowen, president of the company at that time, testifies as follows: " Those of us who resided in Washington county during the interval from June, 1867, to September, 1868, were engaged in making inquiries by correspondence and otherwise to obtain knowledge of a party or parties who would build the road. I engaged myself in correspondence with railroad men in Iowa and elsewhere. The president of the Pennsylvania Railroad was among them. So far as I knew the proposition to corporate with the Sioux City and Pacific came from us. It was not made by me. As soon as I heard of it, as presi-

dent of the Air Line Road, I ordered a meeting of the incorporators and invited John I. Blair and W. W. Walker to meet with us * * * The meeting was held in May, 1868, I was present and presided at the meeting."

On cross-examination he testified: "When I heard a rumor that the Sioux City and Pacific Railroad Company might be induced to build our road, I called the meeting of the company to which I have before alluded and invited Blair and Walker to attend." None of this testimony is denied.

The following is a copy of the proceedings of the meeting referred to by Judge Bowen:

"DE SOTO, May 4, 1868.

"The incorporators of the North Nebraska Air Line Railroad Company met at the office of said company in De Soto, in pursuance of a call made by the president and secretary. Present, John S. Bowen president, J. T. Davis secretary, and T. P. Kennard, D. C. Slader, J. A. Unthank, Thomas Gibson, and T. P. Kennard with proxies in writing for D. Butler, Henry P. Beebe, Thomas J. Majors, and E. S. Dundy, said proxies authorizing him to cast their votes in said meeting.

"The president called the meeting to order, and there being a quorum present upon a call of the roll, the minutes of the previous meeting were read and approved. The object of the meeting being stated in the call to be as follows: To take into consideration the propositions made by John I. Blair, W. W. Walker, Oakes Ames, and members of the Sioux City and Pacific Railroad Company, to take said North Nebraska Air Line Railroad franchise and land grant made to said road by the state legislature of the state of Nebraska, passed on the twentieth day of June, 1867, the said parties agreeing to build said road by the first day of July, 1869, and they fully complying with all laws of the

state of Nebraska under which said franchise and land grant were obtained by said company. After due consideration of the said proposition T. P. Kennard offered the following resolution: '*Resolved*, That we, the incorporators of the North Nebraska Air Line Railroad Company, wishing to facilitate the building of said road, hereby agree and bind ourselves and each member of said incorporation to assign within a reasonable time all their rights, title, and interest in and to said railroad franchise and land grant, to the said John I. Blair, W. W. Walker, Oakes Ames, and members of the Sioux City and Pacific Railroad Company. Said assignment to be placed in the hands of the auditor of the state of Nebraska, to be delivered to said parties if said railroad be completed by the first day of July, 1869, and upon the said parties complying with all the provisions of law under and by which said franchise and land grant were obtained.' The resolution, on motion of D. C. Slader, was adopted, the vote being unanimous."

"At a meeting of the stockholders of the North Nebraska Air Line Railroad Company, held at De Soto on the seventh day of September, 1868, the following named persons subscribed to the capital stock of the company, shares being $100 each:

John I. Blair, 750 shares.....................$75,000
Oakes Ames, 500 shares...................... 50,000
Charles E. Walker, 100 shares............... 10,000
Charles E. Vail, 100 shares................. 10,000
George Douglas, 100 shares................. 10,000
Maurice Brown, 100 shares................. 10,000
T. P. Kennard, 1 share..................... 100
J. E. Davis, 1 share........................ 100
W. W. Walker, 348 shares................. 34,800 "

All of the subscribers except Davis and Kennard were stockholders of the Sioux City and Pacific Railroad. The terms of the subscription were, one-tenth of the

amount subscribed at the time of making the subscription, and the residue to be paid as required by the board of directors. An opportunity appears to have been given residents of the state to subscribe for stock, but from some cause, with the exception of Davis and Kennard, none availed themselves of the opportunity.

At this meeting a board of directors was elected and a resolution passed to open negotiations with the Sioux City and Pacific Railroad Company for a consolidation.

On the ninth day of September, 1868, officers of the corporation were elected for the ensuing year.

On the fifteenth day of September of that year the officers of the two companies entered into an agreement for the consolidation of the two companies, which was afterwards ratified by the stockholders. It is shown by the testimony that $80,000 was paid on subscriptions to stock of the North Nebraska Air Line Railroad Company.

The grading was completed from the Missouri river to Fremont and the track laid about the twenty-second of February, 1869, and most of the grading on the line from Blair to De Soto was done in the winter of 1868 and 1869, and the track laid during the following summer. In regard to the character of this road L. Burnett, chief engineer of the S. C. & P. R. R., testified as follows: "Oak and pine ties were used on this branch road; about one-third hard wood and two-thirds soft. Pine is not as good as oak, but is used on most roads in this vicinity. There were 2,640 ties to the mile, which is the usual maximum number. Weight of iron was forty-five pounds to the yard, the same as that now in use on the Chicago and Northwestern. This was part of a lot of iron bought for the Chicago and Northwestern Company. At that time forty-five pound iron was in general use in the construction of western roads. The iron was in ordinary condition. It had been used about eight

months before on ordinary traffic. It was sufficient in quantity for the use of a road. It is in use now along the Sioux City and Pacific both in main and side tracks. The Omaha and Northwestern had no difficulty to my knowledge in operating the road. There were none but ordinary repairs put upon it."

As to the location of a line west from De Soto, he testified as follows: "I am, or was in 1868, familiar with the character of the country for a few miles west of De Soto. I run or surveyed two or three lines up what is known as Mill creek, which is the nearest point to De Soto where a line could be built at all. In my opinion the most feasible and practicable route for a railroad from De Soto to Fremont was from De Soto to Blair, and from Blair west on the line where the Sioux City and Pacific Road now runs. It was not practicable to run a line directly west from De Soto at all."

John S. Bowen testified that: "The surveys were made immediately after that May meeting in 1868. In my judgment the most practical route was the one on which the road was built from De Soto to Fremont. The country immediately west of De Soto is exceedingly rough and hilly, and impracticable for a road with ordinary grades. The route *via* Mill creek was considered and found to be impracticable on account of its exceeding crookedness. It is my opinion that the route adopted by way of Blair was the only possible one    *

*    *    *    The location of the road from De Soto to Blair, as it was afterwards built, was approved by us and the other incorporators as far as I know. With the resident corporators of the county I was in frequent consultation. I had no doubt from repeated conversations with Unthank, Kennard, Slader, and Davis, that they approved it, as I heard no dissent."

In May, 1868, the town of De Soto contained about three hundred and fifty inhabitants. The town of Blair

was laid out and became the county seat of Washington county in March, 1869. Jesse T. Davis testified that "in September, 1868, there must have been three hundred and fifty inhabitants in De Soto. Since that time it has gradually run down until there are probably not more than thirty people there now. The main business men of De Soto moved to Blair when it was started, and went into business, and also many of the inhabitants." He also testified: "It is my impression that if the road had crossed at De Soto, and had been constructed by its present route, the result would have been substantially the same, and both towns would have been almost as they are now."

C. H. Williard, station agent at Blair, testified that: "The company never ran regular trains over the road from Blair to De Soto; they went down to De Soto to get wood or grain when requested, but never carried passengers over that part of the road. The Omaha and Northwestern Railroad Company completed their road to De Soto in the winter of 1871 and 1872, and they used the Sioux City branch to De Soto."

In December, 1869, the governor and secretary of state issued a patent to the Sioux City and Pacific Railroad Company for the lands in controversy. The patent contains the following recitals:

"*Whereas*, by an act of the legislature of the state of Nebraska, approved on the twentieth day of June, A.D. 1867, seventy-five sections of the public lands granted to the state by the United States for the purpose of internal improvements, as provided in the eighth section of the act of congress of September 4, 1841, were appropriated and donated to the Northern Nebraska Air Line Railroad Company to aid in the construction of its road from De Soto, in Washington county, to Fremont, in Dodge county; and,

"*Whereas*, the said Northern Nebraska Air Line Rail-

road Company has become consolidated with the Sioux City and Pacific Railroad Company, the said consolidated company into which the said Northern Nebraska Air Line Railroad Company by such consolidation has been merged, being known and described as the Sioux City and Pacific Railroad Company, of which consolidation of the two said companies the proper evidence has been filed in the office of the secretary of state, and now remains of record therein; and, ·

" *Whereas*, the whole line of said railroad from De Soto to Fremont has been completed by the Northern Nebraska Air Line Railroad Company so as to entitle it to receive patents from the state for the said seventy-five sections of land under the act of the legislature aforesaid, and no part of said land having been patented before the completion of the entire line; and,

" *Whereas*, the governor, secretary of state, and auditor have selected and set apart for the use of said railroad company, and to aid in the construction of said railroad, seventy-five sections of said land inuring to the state under the act of congress," etc.

On the twenty-first day of May, 1874, the attorney general commenced an action against the defendants in the district court of Dodge county, to quiet the title, to certain lands, and to have declared null, and to cancel of record, the patent above referred to.

The petition alleges that: " The said lands were thereupon by the governor of the state of Nebraska without authority, and illegally, deceived by the false representations of said Sioux City and Pacific Railroad Company, or purposely entering into the fraudulent plans and devices thereof, by letters patent pretended to be conveyed to said company defendant, which letters patent have been by it filed for record and appear of record at pages 225–27, book " G " of the record of deeds of said county of Dodge, and said company have ever

since claimed and assumed to own and hold said lands by virtue thereof, and plaintiff has reason to believe that the other defendants herein named set up and claim an estate in and to some portion of said real estate adverse to that of the plaintiff, claiming under and through the pretended title of the said Sioux City and Pacific Railroad Company. But the plaintiff claims and avers that the said letters patent are, and at and from the date thereof were, of no force or effect; of which all of the said defendants, as well as the Sioux City and Pacific Railroad Company, were bound to take due notice."

The defendants severally answered the petition of the plaintiff, setting up various defenses. The testimony was taken by depositions. On the hearing of the cause a decree was rendered in favor of the plaintiff. The cause is brought into this court by appeal.

Was the grant to the North Nebraska Air Line Railroad Company a grant *in præsenti ?*

In *Rutherford v. Greene's heirs*, 2 Wheat, 198, the terms of the grant were: "Be it enacted that 25,000 acres of land shall be allotted for and given to Major General Nathaniel Greene." The court held this to be an absolute donation, not of any specific land, but of 25,000 acres when they shall have been allotted.

In *Veeder v. Guffy*, 3 Wis., 502, the grant was in the following words: "That there be and hereby is granted to the state of Wisconsin on the admission of such state into the union, for the purpose of improving the navigation of the Fox and Wisconsin rivers, * * * a quantity of land equal to one-half of three sections in width, on each side of the said Fox river and the lakes through which it passes," etc. It was held that "the location of the lands was fixed by the grant, and established as the alternate sections on each side of the Fox river. The quantity then became definite and the location sufficiently certain for the purpose of legislation, for

it required only the ministerial acts of selection, approval, and survey, to render the specific parcels which would fall to the state or the United States certain and definite."

In *Doll v. Meador*, 16 Cal., 315, it was held that the words, " there shall be and hereby is granted," operated to vest the specific quantity of land granted, although the selection and location were to be made afterwards.

In *Strong v. Lehmer*, 10 Ohio State, 98, the grant was as follows: " That there be and are hereby granted to the state of Ohio, 500,000 acres of land owned by the United States within said state, to be selected as hereinafter directed," etc. It was held that these words constitute a present grant, and only require an identification of the lands granted. To the same effect: *Johnson v. Ballou*, 28 Mich., 379. *Branch v. Mitchell*, 24 Ark., 431. *Little v. Watson*, 32 Me., 214. *Sneed v. Ward*, 5 Dana (Ky.), 187. *Allison v. Halfacre*, 11 Iowa, 450.

In *French v. Fyan*, 93 U. S., 170, the court say: " This court has decided more than once that the swamp land act was a grant *in præsenti*, by which the title to those lands passed at once to the state in which they lay, except as admitted after its passage. The patent, therefore, which is the evidence that the lands contained in it had been identified as swamp lands under that act, relates back and gives certainty to the title of the date of the grant." See also *Van Valkenburgh v. McCloud*, 21 Cal., 330.

In *Schulenburg v. Harriman*, 21 Wall, 63, it is held that unless there are clauses in a statute restraining the operation of words of present grant, these must be taken in their natural sense to import an immediate transfer of title, although subsequent proceedings may be required to give precision to that title and attach it to specific tracts. It was also held that the right to restore the reserved rights of the grantor in case of a public

grant, must be asserted by judicial proceedings authorized by law, or by legislative assertion of ownership of the property for breach of the condition.

In a grant or conveyance the words, " give, bargain, sell, or convey," cover almost any form of conveyance, whether at common law or under the statute of uses. Nor does the use of the wrong tense, as " has given and granted," instead of " do " or " does give and grant," make any difference. *Pierson v. Armstrong*, 1 Iowa, 282. 2 Washburn on Real Property, 378.

In the case at bar the language of the act is that: " Seventy-five sections of the public lands   *   *   * be and the same is hereby *appropriated* and *donated.*" The word " appropriate " means to set apart for, or assign to, a particular person or use in exclusion of all others. (Law) To alienate. Webster's Dict., 68.

The word " donate " means to give, generally for a specific object; to bestow freely; to grant. Id., 404.

These are clearly words making a grant *in præsenti* for the purpose specified, the work to be completed within the period prescribed by the act. No case has been referred to by the appellee, holding that these words do not create a present grant, and I think no such case can be found.

In *Koenig v. The O. & N. W. R. R. Co.*, 3 Neb., 382, it was held that a grant from the state, accepted by a railroad company, was in the nature of a contract, and within the letter and spirit of the constitution.

There is nothing in the record to show that the Sioux City Company in the absence of this grant of land, intended to run their road by way of Blair to Fremont, while it is clearly shown that in consequence of this grant, the road was constructed from De Soto to Blair, which all the testimony shows to have been the most feasible and practical route. A continuous line was thus secured between Fremont and De Soto. There is

not a particle of testimony tending to show that this arrangement was not entered into in good faith, and the
fact that men like Judges Bowen and Davis, original
incorporators in the North Nebraska Company, were
satisfied with the arrangement, shows that they regarded
it as having been entered into in good faith, and within
the scope and spirit of the act.   The location of the town
of Blair caused the abandonment of the town of De
Soto; the town site of Blair being much more eligible
than that of De Soto, and its advantages for business,
superior.   But this furnishes no excuse to the railroad
company for ceasing to operate its road or for taking up
its track from Blair to De Soto.   The conditions of the
grant were that the road should be built and operated
from De Soto to Fremont, and the fact that the operation of the road is unprofitable furnishes no excuse
whatever for the failure to comply with the conditions
of the grant, and the state may compel a compliance
with the terms of the contract by mandamus or other
appropriate remedy.   If, as in this case, a portion of the
line has become valueless by reason of the location of
another line in its immediate vicinity, the legislature
undoubtedly may, upon such terms as may be just, grant
relief, provided it does not affect vested rights.

The petition in this case, although containing but a
single count, was drawn with evident intention of enforcing a forfeiture of the grant, and almost the entire
testimony is directed to that point; as it is apparent that
the action of forfeiture, having been instituted before
seven years had elapsed from the time of the passage
of the act making the grant, is premature, and that portion of the case is abandoned by the state.   The only
ground, therefore, upon which relief is sought or can be
granted, if granted at all, is under the statute to quiet
title.

Section one of " An act to quiet title to real estate,"

approved February 24, 1873, provides: "That an action may be brought and prosecuted to a final decree, judgment, or order, by any person or persons, whether in *actual* possession or not, claiming title to real estate, against any person or persons who claim an adverse estate or interest therein, for the purpose of determining such estate or interest, and quieting the title to said real estate."

Independently of the statute, the powers of a court of equity are only invoked when either many persons assert titles adverse to that of the plaintiff, or when one person has repeatedly asserted his single title by successive legal actions, all of which have failed. In either case the object of the suit is to settle the whole controversy in one action. *Eldridge v. Hill*, 2 Johns. Ch., 281. *Tenham v. Hebrert*, 2 Atk., 483. Willard's Eq., 323.

In order to maintain the action the plaintiff must, *first*, have been in possession for some considerable time, and it must appear that his rights are contested by numerous parties, either in the same or upon distinct rights; or, *second*, the plaintiff must have established his right by repeated trials at law, and is nevertheless in danger of further litigation by parties who controvert· that right. Willard's Eq., 323.

In *Thomas v. White*, 2 Ohio State, 548, it was held that under the statute the plaintiff must have both the *legal title* and possession, to maintain a bill *quia timet*. See also *Harvey v. Jones & Eaton*, 1 Disney, 65.

A party in possession having the legal title, may institute an action under the statute to quiet that title against a pretended claim. The right to file the bill depends on the existence of a legal title superior to any in the claim of the defendant. *Douglass v. Scott*, 5 Ohio, 194.

In *Collins v. Collins*, 19 Ohio State, 468, it was held that a party in possession could not maintain an action

against persons claiming a remainder therein, contingent upon the death of the plaintiff without issue.

Section 557 of the Ohio code is as follows: "An action may be brought by any person in possession by himself or tenant of real property, against any person who claims an estate or interest therein, adverse to him, for the purpose of determining such adverse estate or interest."

Whatever the rule may be as to a party in actual possession, it is clear that a party not in possession must possess the legal title, in order to maintain the action.

Section fourteen, article three, of the constitution of 1867, provided that: "All grants and commissions shall be issued in the name and by the authority of the state of Nebraska, sealed with the great seal, signed by the governor, and countersigned by the secretary of state." A patent thus issued in pursuance of an express grant, is not void upon its face, and passes the legal title. It may be impeached for fraud, or set aside for other sufficient cause, but cannot be assailed collaterally. The plaintiff cannot obtain indirectly what cannot be done directly. If an action to secure a forfeiture of the grant is premature, then the facts set forth in the petition and proved on the trial do not in this form of proceeding authorize the interference of the court. There is no allegation in the petition that the company is insolvent, or anything to show that the state will suffer by waiting until the period of seven years had elapsed from the time of making the grant. The defendant, unless relieved by the legislature, must conform to the terms and conditions of the grant, and the entire line must be kept in running order and operated. But as proceedings to quiet title cannot be maintained upon the facts stated in the petition, and proved on the trial, the judgment of the district court is reversed and the case dismissed without prejudice.

JUDGMENT ACCORDINGLY.