HENRY A. KOENIG, STATE TREASURER, PLAINTIFF IN ERROR, v. THE OMAHA AND NORTH WESTERN RAILROAD COMPANY, DEFENDANT IN ERROR.

| 3 | 373 |
|---|---|
| 7 | 373 |
| 14 | 129 |

**Grants.** When the right to property is vested by grant for a particular purpose, by legislative authority or otherwise, the legislature cannot vest it for another. If the legislature declares the purpose to which the subject matter of a grant shall be applied, its power over it is exhausted, and it cannot by legislative grant be appropriated for another and different purpose, except in case of a grant with conditions subsequent, where there is a clear forfeiture, by the grantee of the conditions annexed to the grant.

**Constitutional law: STATUTES CONSTRUED.** The act of the legislature of Nebraska, approved February 15, 1869, donating to railroad companies which should comply with its conditions, the lands donated to the State by the United States, for works of internal improvement, is a *contract* between the State and the railroad companies which have accepted the grant of lands contained in that act; and the act of the legislature, approved March 1, 1871, which undertakes to dispose of a portion of the same lands for the purpose of building highway bridges across the Platte river, impairs the obligations of the contract between the State and the railroad companies above cited, and is unconstitutional and void.

ERROR to the district court of Lancaster county.

The opinion states the case.

*J. R. Webster, Attorney General,* for plaintiff in error, said, *inter alia,* that the defendant in error could only be allowed the relief prayed for, and granted by the court below, upon the assumption that the act of 1869 operated as a grant, or that, upon acceptance of its provisions, it became a contract between the state and the companies so accepting, neither of which views could by any fair construction of the act be maintained. That the act was not a grant was so clear by its own terms that this branch of the question was out of the enquiry in its construction.

And the defendant in error could not claim its benefits as a grant, nor yet as a contract, for either must be

between parties in existence and capable of assent at the time of its making. Two parties *in esse* were requisite in either case, and the defendant in error had no existence at the time of the passage of the act of 1869, nor until nearly a year thereafter. Nor were there, by any parties, mutual promises provided for by the act, nor other provisions which would make it effectual as a contract with, for, or by a corporation thereafter to be organized, and then contemplated. To construe the act as a contract on the part of the state would defeat the claim of the defendant in error, for it then had no existence or power to contract or to receive a grant, nor was its future existence contemplated or provided for. In framing acts of this nature it would be found that legislatures provide that they should operate in favor of future corporations, if such was the intention.

·The act of 1869 was neither a grant nor a contract. Its provisions are the gratuitous offer of a bounty, an aid, or subsidy to such parties as during the continuance of its good pleasure should comply with the conditions imposed. The act was valid no longer, and no further than the good pleasure of the legislature, moved by considerations of public interest might prompt a continuance of the offer of its bounty to aid the development of this particular class of public improvements, and no rights could, or did, under the act of 1869, become vested until full compliance with the terms and conditions imposed. The companies did not become entitled to the benefits of the act in entirety. The benefits it confers are claimable and receivable in moieties. They did not become entitled to the maximum of benefit by merely commencing to comply with its conditions. Their rights became vested only in the several moieties provided in the act as the several sections of their roads were completed. And should the state, from any considerations of public interest moving the legislature to that course,

recede from the offer of its bounty before, by the completion of any certain ten mile section the bounty for that section was fully earned, the companies would have no vested interest in the lands to which, under the act, before such action of the legislature they might become entitled, which would enable the defendant in error to maintain this action, which was one in effect against the state for specific performance. If damaged by such action they might equitably have a claim upon the legislature for relief, but they would have no right that would enable them to defeat legislation enacted from paramount consideration of public interest requiring other use or appropriation of some portion of the lands.

The law of 1869 would not bear the construction contended for by the defendant in error. The companies accepting its conditions were under no obligation to fulfill its conditions. They were required to obligate themselves to nothing. Their acceptance would have no binding force upon them ever to accept the conditions of the act. They might at any time abandon their enterprise, after completion of some section of their road and receipt of the state bounty. They were bound to nothing further. They need never extend their road. They need never equip it with rolling stock. They need never make it subservient to any public interest. They were to make it ready for the rolling stock, and nothing more. They were required to carry no burden, to do no service for the state or the public. They might even remove their iron, material, and structures. They might wholly dismantle and abandon their line and their franchise. This was not the language or conditions of contract. There was no mutuality of obligation. Every element of contract was wanting. But if it did not bind the companies, if it did not bind the defendant in error, it did not bind the state. It was a mere bounty, subsisting only during the good pleasure of the legislature, to

be rescinded in its pleasure, at any time before full performance by the companies.

In support of these views *Mr. Webster* cited the following cases: *The East Saginaw Manufacturing Co. v. The City of East Saginaw*, 19 *Mich.*, 259. *Fletcher v. Peck*, 6 *Cranch.*, 87, 136. *Dayton v. Coy*, 13 *Ohio State*, 84, 92. *Stourbridge Canal Co. v. Wheeling*, 2 *Barn and Ald.*, 792, 793. *Charles River Bridge v. Warren Bridge*, 11 *Peters*, 420, 545. *Illinois and Michigan Canal v. C. R. I. & P. R. R. Co.*, 14 *Ill.*, 312, 331–2. *Trustees v. Rider*, 13 *Conn.*, 87, 93. *Plank Road Co., v. Husted*, 3 *Ohio State*, 578. *Smith on Contracts*, 88. 2 *Parsons on Contracts*, 5th, *Ed.*, 517, 519, *and cases cited. Church v. Crocker*, 3 *Mass.*, 17, 21. *The State v. Rackley*, 2 *Blackf.*, 249. *United States v. Arrendondo*, 8 *Peters*, 738.

*Clinton Briggs*, for defendant in error, urged that the act in question was a grant, although it did not by itself constitute a contract, but when any company had complied with the conditions of the act, then the contract between it and the state was complete; that this contract was mutual, the state granting the lands for a specific purpose—the company accepting the same upon the conditions imposed; that being a contract it was protected both by the Federal and State constitutions, and the act of 1871, granting a portion of these lands for another purpose was unconstitutional and void. *Dartmouth College v. Woodward*, 4 *Wheaton*, 518. *McCracken v. Haywood*, 2 *How.*, 612. *The Binghampton Bridge*, 3 *Wall*, 51. *McGee v. Matthias*, 4 *Wall*, 143. *People v. Commissioners*, 53 *Barb.*, 70. *Penrose v. Erie Canal Co.*, 56 *Penn. State*, 46. *Warren v. Lyons City*, 22 *Iowa*, 351.

GANTT, J.

The defendant in error was plaintiff in the district court, and by its petition alleged, *inter alia*, that it is a corporation duly created under the laws of this state, and as such company commenced and built ten consecutive miles of a first class railroad, which was examined and approved by commissioners as directed by law, who made report of their examination to the governor of this state, and that the governor accepted and ratified such report, and thereupon twenty thousand acres of land were patented to the defendant in error; and that all this was done before February 15, 1870; that afterwards the defendant in error built sixteen additional miles of such railroad, ready for the rolling stock, ten miles of which have been examined, and the defendant in error is entitled to receive an additional twenty thousand acres of land for the same, and that it intends to build at least fifty consecutive miles of said road within two years. It is further alleged that the expenditure of money in the construction of the road was upon the faith and credit of the act, approved February 15, 1869, disposing of the five hundred thousand acres of land granted to this state by the United States for works of internal improvement, and upon the belief that the lands so granted would be held for the purposes alone expressed in the above named act of the legislature of this state. *Laws of* 1869, 153. It is further alleged that six railroad companies have complied with the conditions of this act, and have received lands amounting in the aggregate to two hundred and eighty thousand acres, and that of the remaining two hundred and twenty thousand acres, one half will be disposed of within the next ninety days. It is further alleged that by act of March 1, 1871, (*Laws of* 1871, 171), fifty sections of these internal improvement lands were diverted to aid in the construction of highway bridges across the Platte

river, which the state treasurer is directed immediately to select and set apart for such purpose, and that the state treasurer is about to make the selection of the fifty sections according to the terms of this last act, and that if such selection should be made it would work great and irreparable injury to the defendant in error, and it was therefore prayed that the plaintiff in error be perpetually enjoined from complying with the terms of the act of March 1, 1871. To this petition a general demurrer was interposed. The demurrer was overruled and the injunction made perpetual. The overruling of this demurrer and the giving of judgment for the defendant in error, and not for plaintiff, is now assigned as error.

By the act of February 15, 1869, each railroad company within the state shall be entitled, upon certain conditions, to two thousand acres of land for each mile of road it may construct, as a first class railroad, after the passage of the act; and " *this grant is upon the express condition* " that no company shall receive the land until it shall have built ten consecutive miles of such railroad, which must be examined, accepted and approved by commissioners to be appointed by the governor, and in like manner such company shall receive lands as each ten consecutive miles of its road shall be completed, but in no case shall such company receive more than one hundred thousand acres; that the land received by such company shall not be sold at less than one dollar and twenty cents per acre, and must be sold within five years in tracts not larger than one hundred and sixty acres. And it is declared as a " positive condition of this *grant* " that " no company shall receive any lands after the expiration of five years from the time this act becomes a law, and whenever the land held by the state, for the purposes aforesaid, shall be exhausted in the manner provided by this act, the governor shall notify all railroad companies who may have filed their assent to its conditions, to that effect, and no

lien upon the state for lands in aid of the construction of any railroad within the state shall thereafter be valid." These are the conditions annexed to the grant, so far as need be now noticed.

The land was granted to the state by the United States by the act of Congress of September 4, 1841, 5 *U. S. Statutes at Large*, 455, which declares that " there shall be, and hereby is *granted* to each new state that shall hereafter be admitted into the Union, upon such admission, so much land as, including such quantity as may have been granted to such state before its admission, and while under a territorial government, for the purposes of internal improvement, as shall make five hundred thousand acres of land." This grant was made only for the purpose of internal improvement, and the state held the lands for this specific purpose. It could make no other disposition of them, but had the right to designate to what works of internal improvement the lands should be granted, and therefore by virtue of this authority, the legislature of the state, by the act of February 15, 1869, entitled " an act to dispose of the public lands granted to the state of Nebraska, for works of internal improvement," *granted* these lands to railway companies within the state, upon conditions subsequent annexed to the grant.

The defendant in error alleges that six railroad companies have accepted the conditions of the grant, and complied with the same so far as is required by the act, and therefore have acquired vested rights to the lands. But the counsel for plaintiff in error insists that the act was neither a grant nor a contract, but that its provisions are the gratuitous offer of a bounty, an aid or subsidy; and in support of this position, cites the case of *The East Saginaw Manufacturing Co. v. The City of East Saginaw*, 19 *Mich.*, 258. *et seq.* It appears that the case arose under a legislative act which provided that " all property, real and personal, used for the manufacturing

of salt, shall be *exempt* from taxation for any purpose."
The court says that "the act of 1859 is clearly in its
nature and purpose a bounty law and nothing else," and
discusses at some length the nature, force, and effect of
such a law; and says that "it has been too often
remarked, to render it important for us to enlarge upon
it here, *that the power of taxation is one of the essential
powers of sovereignty*, which the state must exercise
again and again, as often as its needs, or its interests may
require, and one that cannot in the least be crippled or
abridged, without to that extent crippling the state,
impairing its vitality, and in some degree endangering
its existence. It is upon this ground that it has been so
often and so earnestly denied by learned and able jurists,
that it is within the grant of authority to any legislative
body chosen as representatives of the people, to enter
into any contract by which they bargain away any por-
tion of the power to levy taxes for the needs of the gov-
ernment."

The main question determined in this case seems to
have been, that the legislature could not by legislative
act enter into any contract to bargain away any portion
of the power to levy taxes for the needs of the govern-
ment, because such power of taxation is one of the essen-
tial powers of sovereignty, and cannot be abridged with-
out to that extent crippling the state, impairing its vital-
ity, and in some degree endangering its existence.

But this Michigan act was one to " *exempt* " property
from taxation. Exemption is defined to be an immunity,
freedom from any service, charge, burden, taxes, etc., to
which others are subject. And in such case the court says
that " we must not forget that the promise and obligation,
whatever it is, is on the side of the state only. Those
who accept the bounty promise nothing and bind them-
selves to nothing." But in respect to a grant, Bouvier
says that it is a generic term applicable to all transfers of

real estate; and it is said that a grant made by law vests an indefeasible and irrevocable title. 3 *Wash. Real Estate*, 173. In the case of *Terrett v. Taylor*, 9 *Cranch*, 50, 57, it is said, "we have no knowledge of any authority or principle which could support the doctrine that a legislative grant is revocable in its own nature, and held only *durante bene placito*. Such doctrine is utterly inconsistent with a great and fundamental principle of a republican government, the right of the citizens to a free enjoyment of their property legally acquired." And in the case of *Warren v. The Mayor of Lyons City*, 22 *Iowa*, 355, it is said, "nothing can be clearer than that if a grant is made for a specific, limited, defined purpose, the subject of the grant cannot be used for another."

Hence, it may be laid down as a rule of law, that when the right to property is vested by grant for a particular purpose, by legislative authority or otherwise, the legislature cannot vest it for another. The legislature having declared the purpose to which the subject matter of the grant shall be applied, the legislative power over it is exhausted, and it cannot by legislative grant be appropriated for another and different purpose, except in case of a grant with conditions subsequent, when there shall be a clear forfeiture by the grantee of the conditions annexed to the grant.

In the case at bar, the defendant in error accepted the legislative grant of the land with a condition subsequent. It has so far complied with the terms of the grant, and has a period of five years to fulfill the conditions.

Upon the authority of the old maxim, *exampla illustrant, non restringunt, legem*, it may be observed that legislative grants of land with conditions subsequent, have frequently been made for purposes of internal improvement, and I am not aware that the legality and binding contracts of such grants have ever been questioned, when the conditions have been complied with.

However, if the conditions be broken, then the title of the grantee, by reason of such breach, is at once divested, without any entry or other action on the part of the state, as is required to defeat the estate in the case of private grant. *Kennedy v. McCartney*, 4 *Port.* (*Ala.*), 141. 3 *Wash., Real Estate*, 172. But it is said if in making a grant, there be conditions subsequent annexed which becomes impossible by the act of the grantor, the estate becomes absolute. 3 *Wash., Real Estate*, 181.

Is the grant a contract? In 1850, by act of Congress, the United States granted all swamp and overflowed lands in Arkansas to the state, on the condition that the proceeds of the lands, or the lands themselves, should be applied, as far as necessary, in reclaiming them for cultivation. The state accepted the grant, and in 1851, by legislative act, provided for the disposition of these lands. In the case of *McGee v. Matthias*, 4 *Wall*, 155, the court says: " It is not doubted that the grant by the United States to the state upon conditions, and the acceptance of the grant by the state, constituted a contract. All the elements of a contract met in the transaction— competent parties, proper subject matter, sufficient consideration, and consent of minds." And again, it is said that "a grant, in its own nature, amounts to an extinguishment of the right of the grantor, and implies a contract not to re-assert that right. A party is, therefore, always estopped by his own grant." A contract executed and a contract executory contains obligations binding on the parties, and as the clause in the constitution which inhibits any law impairing the obligation of contracts, uses the general term " contract," without distinguishing between those which are executory and those which are executed, it must be construed to comprehend both classes of contracts; and the inhibition applies as well to contracts made with the state as to contracts made

between two individuals. *Fletcher v. Peck*, 6 *Cranch*, 137. *Enfield v. Permit*, 5 *New Hampshire*, 280.

In the case at bar, the parties to the contract, under the act of February 15, 1869, are the state and the railroad companies who have accepted the grant of lands, and who have so far, as required, complied with the conditions of the contract. It is a contract on the faith of which individuals have largely invested their money. It is, therefore, a contract within the letter and spirit of the constitution, which provides that "no law impairing the obligation of contracts shall be passed." And as the act of March 1, 1871, disposes of a portion of the same lands to another and different purpose, it impairs the obligations of the contract made between the state and the railroad companies, under the act of February 15, 1869, and is unconstitutional and void. The judgment of the district court must be affirmed.

JUDGMENT AFFIRMED.

Mr. Justice Maxwell concurred. Lake, Ch. J., having tried the cause in the district court, did not sit.