HIRAM P. RIDER, PLAINTIFF IN ERROR, V. THE B. & M. R. R. CO., DEFENDANT IN ERROR.

1.  **Railroad grant: RIGHT OF WAY.** The grant of right of way to the Burlington & Missouri River Railroad Company over the lands of the United States, by Sec. 18 of the act of July 2d, 1864, was of a present interest, and notice from the passage of the act to all persons dealing with public lands, within the prescribed limits, of the company's interest therein.

2.  ————: CHANGED LINE OF ROAD. And where after one location of its road, the railroad company changed its line pursuant to the act of congress, approved May 6, 1870, U. S. Stat. at Large, 118, *Held*, That a purchaser of land from the United States, after the passage of the act, took it subject to the right of way under the new location afterwards made.

ERROR to the district court for Saline county. Tried below before WEAVER, J.

*J. R. Webster*, for plaintiff in error.

1.   The entry made by a pre-emptor, when once consummated by performance of the conditions and payment made, is equivalent to purchase at the date of such location. Therefore the title of Rider and his right to compensation is as though full payment had been made June 7th, 1870. Prior to this date defendant had made no location of its line on these lands. On the contrary it had made a location on a line passing some miles north of these lands, and on that location had obtained the defining of its grant and the withdrawal of the granted lands from market. Even as late as May 6th, 1870, congress had passed an act permitting change in the location of its line, but no actual change of its line had been made when the pre-emption entry was made, nor till after February 20th, 1871, and probably not till between the 17th and 20th of March, 1871, which is the nearest approximation to the date that

the chief engineer and superintendent Doane can give, and he is the sole witness. May 14th, 1870, the company had, besides its original fixed line, at least three new trial lines passing north and south of these lands.

2. This case is not dependent on the same principle as that of *St. Joseph & Denver R. R. v. Baldwin*, 103 U. S., p. 426. Although the U. S. supreme court in that case came to a different conclusion to that reached by this court in the same cause, 7 Neb., 247, yet the opinion and reasoning of this court have the assent of the greater portion of the bar. In that case, however, the words and terms of the grant were somewhat different. Compare 13 U. S. Stat. at Large, 364, sec. 18. 14 U. S. Stat. at Large, 211, sec. 6. Admit the identity of the terms and effect of the grant in each case, the circumstances were different. In the case decided at the time of the entry, the railway company had a floating grant of right of way between two fixed termini. It had accepted the grant, and this was some notice that it might demand a right of way over these lands on a definite location of its line. Of the same character was *Flint v. Gordon*, 41 Mich., 420. In the case at bar a definite location had been made after the acceptance of the grant. This should fairly be held to be a fixing of any floating right of location, a segregation and definition of its claims for right of way. It was in effect a release of any floating right of way location, and consent that entry or location by private parties could safely be made on this land. The act permitting change of location (May 6th, 1870) was a mere license and not obligatory on the company, nor yet conferring any right as against others purchasing from the United States till it had been by defendant accepted and acted upon. This did not occur until after the lands in question had been segregated from the mass of the public domain by Englebright's settlement and entry, when it was too late for defendant to appropriate them without compensation.

*Marquett, Deweese & Hall,* for defendant in error, cited: *Fitzpatrick v. Bubois,* 2 Sawyer, 434. *Frisbie v. Whitney,* 9 Wallace, 191. *The Yosemite Valley Case,* 15 Wallace, 86. *Grinter v. K. P. Ry. Co.,* 23 Kansas, 656. *Merritt v. Northern R. R. Co.,* 12 Barb., 606.

LAKE, CH. J.

The controlling principle in this case is not different from that applied by the supreme court of the United States in the case of the *St. Joseph & Denver City Railroad Co. v. Baldwin,* 103 U. S. Reports, 426. The statute giving the right of way there considered is not essentially different from the one granting the right of way here in controversy. In both statutes, words of present grant are employed to designate the right given. To the St. Joseph & Denver City company, the grant is in these words, viz.: "That the right of way through the public lands be, and the same is hereby granted to said St. Joseph & Denver City Railroad company," etc. Sec. 6, act of July 23d, 1866, 14 U. S. Statutes at Large, 211. The grant in this case is as follows: "And for the purpose of enabling said Burlington & Missouri River Railroad Company to construct that portion of their road herein authorized, the right of way through the public lands is hereby granted to said company for the construction of said road." Sec. 18, act of July 2d, 1864, 13 U. S. Statutes at Large, 364.

Being a grant of a present interest, this language is notice from the passage of the act to all persons dealing with public lands within the prescribed limits of the grantee's interest therein. In this respect the grant of the right of way differs from that donating land to aid in the construction of the road, which is expressly limited in its operation to the time when the route is definitely fixed. *Vance v. B. & M. R. R. Co.,* 12 Neb., 285.

Speaking upon this subject of right of way under the act of July 23d, 1866, in the case first above cited, Mr.

Justice Field said: "But the grant of the right of way by the sixth section contains no reservations or exceptions. It is a present absolute grant, subject to no conditions, except those necessarily implied, such as that the road shall be constructed and used for the purpose designated." And again: "The uncertainty as to the ultimate location of the line of the road, is recognized throughout the act; and where any qualification is intended in the operation of the grant of lands from this circumstance, it is designated. Had a similar qualification upon the absolute grant of the right of way been intended, it can hardly be doubted that it would have been expressed. The fact that none is expressed is conclusive that none exists."

It is claimed, however, that the case wherein this language was used differs from the one we are now considering in this, that the right of way there upheld was on the first and only line adopted by the railroad company, while here it appears that another and different location had been made as early as the 15th of June, 1865, and the right now contended for was selected in pursuance of a change therein, by which the road was made to cross the plaintiff's land. And it is urged that, although this change was authorized by act of Congress, yet it should not be held to confer any right upon the railroad company as against a purchase from the United States, prior to the definite location of the new route; that the first location should "be held to be a fixing of any floating right of location, a segregation and definition of its claims for right of way."

We cannot assent to the application of this proposition to this case. If the plaintiff had acquired the government title to the land after the first location of the road, and before the passage of the act authorizing a change, there would be great strength in the position here taken. But as we view the effect of this act, it was, from the date of its passage, to bring section eighteen of the act of July 2, 1864, above referred to, into full operation as to public lands, not

otherwise disposed of, which the new location might cross. The act authorizing this change is, "Be it enacted," etc., "that the Burlington and Missouri River Railroad Company, or its assigns in the state of Nebraska, may so far change the location of that portion of its line that lies west of the city of Lincoln, in said state, as shown by the map thereof, now on file in the general land office of the United States, so as to secure a better and more practicable route, and to connect with the Union Pacific railroad at or near the Fort Kearney reservation, said new line to be located on the land grant made by the United States to aid in its construction. *Provided, however,* that said line shall not be located farther south than the southern boundary line of township number seven, in said state, and said change shall not impair the rights to, nor change the location of said land grant, and the said company, or its assigns, shall receive no different or other or greater quantity of land than if this act had not been passed and no change had been made in the located line of said railroad."

It will be observed that there is nothing in this language evincing any intent or disposition on the part of congress to withdraw any right given by the act of July 2, 1864, which might be applicable to this new line, except that the location and extent of the land grant as already determined should not be changed.

We are of opinion that when the plaintiff's grantor, Englebright, pre-empted this land on the 7th day of June, 1870, he took it subject to the right of the defendant to locate its new line across it. And the judgment of the district court, being in conformity with this view, is affirmed.

JUDGMENT AFFIRMED.

MAXWELL, J., dissenting.

I am unable to give my assent to the opinion of the majority of the court for the following reasons:

The plaintiff is the owner of the north-east quarter of section 20, township 8, range 1 east, and the defendant's railroad runs across the same in a diagonal manner, taking a strip about 200 feet in width by more than half a mile in length, the whole amount of land taken being in excess of 12 acres. Rider acquired title as follows:

On the 14th of June, 1870, one John Englebright filed a declaratory pre-emption statement alleging settlement on the 7th of that month. He made final proof and payment for the land June 14, 1871, and received his patent March 20, 1872. On the 24th of June, 1871, Englebright conveyed the west half of the land in question by warranty deed to the plaintiff and one Clark. In September of that year Clark and wife conveyed to the plaintiff. It appears, too, that Englebright on the 24th of June, 1871, conveyed the east half of this land to one Gary, and that in August of that year Gary and wife conveyed to the plaintiff.

On the 15th of June, 1865, the defendant filed a plat locating its line of railway from Plattsmouth to Kearney, on the Union Pacific railroad, and in August, 1870, Congress passed an act authorizing a change of the line within certain limits, west of the Blue river. In pursuance of this statute the company in 1871 filed a plat of the new line which passed through the lands in question, the settlement of Englebright thereon being made before the second plat was filed.

This action is brought by the owner of the land to recover damages for the land taken and other damages to the remainder of the tract. Two questions are presented: *First.* Did the defendant, by the location of its line on the 15th of June, 1865, exhaust the power given it to locate its line on the public lands of the United States? *Second.* If it did not, can it claim the right of way over lands that had been settled and filed upon under the pre-emption law before the second location of its line, and final proof and payment thereafter made?

In the case of *Moorhead v. Little Miami R. R. Co.*, 17 Ohio, 340-353, the company had located and constructed its road under a special charter, and the question presented was its right to relocate and reconstruct its road on other and distinct grounds. The tenth section of the charter required the company to select the route as soon as practicable. The twelfth section gave authority to vary the route and change the location after the first selection had been made. *First.* Whenever a better and cheaper route could be had. *Second.* Whenever any obstacle to continue said location was found, either by difficulty of construction or procuring right of way at reasonable cost. Under these latter provisions the company claimed the right to condemn the complainant's property. The court say, page 350-1. "These grants of power are in derogation of private right, and would be totally void, but for the provisions of the constitution, which make private rights subservient to the public welfare. Admitting that the interests of the public were such as to warrant this extensive delegation of the right of sovereignty, or right of eminent domain, and it is quite certain that the power should be clearly expressed, or necessarily and clearly implied from what is clearly expressed in the grant.

"In such case the rule of construction should be strict. No state can ever be presumed to have parted with a portion of its sovereignty even to her own citizens, without a grant affirmatively made. And no statute derogatory of private right should gain anything by forced construction. The general rule requiring grants of this nature to be strictly construed is in our opinion the only safe one, and it should be adhered to with unyielding tenacity." * * * * * "That statutes of this nature should be strictly construed, is a position abundantly sustained by the cases cited by complainant's counsel.

"This case stands thus: The corporators had the power to locate and construct a railroad. They could exercise this

right but once without a further grant. To accomplish this object a most important attribute of sovereignty was bestowed upon them by the legislature—the extraordinary reserved power of subjecting the property of private individuals to a public use. If it was intended that this should be a continuing power, one that might be exercised, and re-exercised again and again, as often as might suit the convenience of the company, the legislature should have so declared in express terms."

In the case of *Little Miami R. R. Co. v. Naylor*, 2 Ohio State, 236, this decision was affirmed. See also *Blakemore v. Glamorganshire Canal Co.*, 1 My. & K., 154. *Canal Co. v. Blakemore*, 1 Cl. & Fin., 262. *State v. Turnpike Co.*, 10 Conn., 157. *Turnpike Co. v. Hosmer*, 12 Id., 364. *L. & N. Turnpike Co. v. N. R. Turnpike Co.*, 2 Swan, 282. 1 Redfield on Railways, 410.

If these cases state the law correctly, of which there is no doubt, then the defendant by the location of its line over the public lands exhausted its power in that regard, unless there is some provision in the act of 1870 continuing the grant of the right of way on the new line, and an examination of that act will show that while the land grant is preserved there is nothing said about the right of way. The right of way over the new line was not therefore granted to the defendant. But suppose it was, still the plaintiff is entitled to recover. Suppose Congress should pass an act granting the right of way to a railway company across the public lands—a grant *in presenti*, but there is no provision in the act for withdrawing such lands from market or selling them subject to the grant, is not a purchaser from the United States, without notice, entitled to protection? It will be said that the statute is notice of the grant, and that is sufficient; but that the statute is not notice is evident, because until the line is located it is a mere possibility. But before this grant was made Congress had passed general laws, granting to persons possessing certain qualifications portions of the public

lands not exceeding 160 acres to each person, the grant being made upon certain conditions, such as settlement, residence, etc. Here is a continuing offer to settlers on the part of the United States to settle on the public domain, and the proposition when accepted becomes a contract between the individual and the government, that if he comply with the terms of the statute he shall in due time receive a patent for the land claimed. A grant of right of way rests upon the same ground, and is a mere proposition in the first instance to give the right of way if the company will build its road thereon. If the company should fail the grant would lapse. It seems to me therefore that until the company located its second line it could not claim the right of way across lands which prior to that time had been entered as a homestead or settled upon under the pre-emption law. The language of sec. 2257 of the Revised Statutes of the United States is, that " all lands belonging to the United States to which the Indian title has been, or may hereafter be extinguished, *shall be subject to the right of pre-emption* under the conditions, restrictions, and stipulations provided by law." The lands excepted are: *First.* Those included in a reservation. *Second.* Lands within the limits of a town or selected as a town site. *Third.* Lands actually settled upon and occupied for purposes of trade and not for agriculture. *Fourth.* Lands on which are any known saline or mines.

This land was not within the exceptions, and being claimed as a pre-emption, was not government land. By the term " government land," I understand is meant land which is subject to disposition by the government. Suppose a grant of land is made to a railroad company to be conveyed to it in certain quantities upon the completion and acceptance of certain sections of the road, and that after the acceptance of the grant and the company's rights had vested, but before the acceptance of any portion of the road, Congress should pass another act granting the land

to another company, will it be contended that Congress in such case possessed such power? The rights of the company would have attached and the courts would see that they were enforced. Wherein does the case of a pre-emptor, who has settled on public land in good faith and filed his declaratory statement, differ from that of the railroad company? The case is well illustrated in that of *Koenig v. The O. & N. W. R. R. Co.*, 3 Neb., 373, where it was held that when the right to property is vested by grant for a particular purpose by legislative authority, the legislature cannot vest it for another. See also *McGee v. Matthias*, 4 Wall., 155. Are not the rights granted to a pre-emptor entitled to the same protection? Besides, the right of pre-emption can be exercised but once by an individual. He settles upon and enters 160 acres of land, intending to make his home thereon. In entering the land he pays the full price per acre for the entire tract, and receives a patent therefor. Afterwards a railroad is located across the land under an act of Congress granting the right of way, which act was passed before he entered the land, and under which the right of way is claimed across his land without compensation. If the right of way can be taken in this manner it is not the government that is granting it, but it is taken from the individual who is the owner of the entire tract.

In the case at bar the entire tract was entered and paid for, and if the defendant is not required to pay the damages the *citizen* and not the *government* must bear the loss. To me this seems like rank injustice, and I cannot give my assent to such a construction of the law. From the necessity of the case a railroad company is permitted to choose the most available route for its line of road, and the rights of individuals are so far subservient to the public welfare that any real estate necessary for right of way may be appropriated to its use, compensation being made therefor, but the courts by no strained construction of the language of a statute should deprive the owner of that which is justly his due.