STATE OF NEBRASKA, PLAINTIFF, V. GEORGE CORDING, DEFENDANT.

FILED MAY 5, 1917. No. 19540.

1. **Public Lands:** CONVEYANCE: CONSTRUCTION. The state is not bound by the unauthorized acts of its agents, and public policy requires that such acts be restrained, and, when contrary to public interest, annulled. When, however, the state by its authorized agents executes a conveyance that is ambiguous or susceptible of different constructions as to the intention or purpose of the state, and a definite construction of its meaning and of the intention and purpose of the state in executing the same has been understood and acted upon by the public generally, and knowingly acquiesced in by the state, the original right of the state to assert a different construction of the conveyance may, by great lapse of time, be considered as abandoned, if the assertion of such right will manifestly work an injustice.

2. ———: ———: ———. Under the circumstances in this case, indicated in the opinion, it is considered that, the public generally having acted upon the understanding that the deed of the state was intended to convey the land in question, and the state having knowingly acquiesced in that construction of the intention of the state for more than 40 years, the state ought now to be held to have abandoned any other construction of its deed.

Original action in ejectment. *Judgment for defendant, and action dismissed.*

*Willis E. Reed, Attorney General, Dexter T. Barrett* and *George W. Ayres,* for plaintiff.

*Hainer, Craft & Edgerton* and *Heasty & Barnes, contra.*

SEDGWICK, J.

The state brings this original action in this court to recover 80 acres of land. In 1872 the state conveyed a large tract of land "for works of general improvement" to the Omaha & Southwestern Railroad Company, pursuant to and in harmony with the act of congress under which the lands were granted to the state. The deed from the state to the railroad company conveyed lands adjoining section 7,

State v. Cording.

and described seven-eighths of the section by particular descriptions, omitting one-half of one quarter of the section, being about 80 acres, and the land here in controversy. The deed stated that the land conveyed by the state was 626.18 acres, the number of acres shown by the government survey to be included in the entire section.

The question might well have been raised whether this 80 acres of land that is now in question was intended to be conveyed and was omitted by mistake. The state for about 40 years construed this deed as conveying the entire section. During that time this defendant purchased this 80 acres of land, and took a conveyance purporting to convey the title, and had held it under this color of title for about 20 years. This 80 acres of land was assessed for taxation prior to 1889 and in that year, and continuously from the year 1889 until the present time. The state has received the benefit of these taxes, and all of the officers of the state from the time of the conveyance by the state in 1872 knew that in construing its deed as a conveyance of the entire section the state would be able to collect taxes thereon, and has continued in various ways to construe its deed as conveying this 80 acres of land in question, and has acquiesced in the construction which this defendant and his grantors placed upon the deed and upon the intention of the state in executing the same. In *State of Michigan v. Jackson, L. & S. R. Co.*, 69 Fed. 116, the court of appeals of the sixth federal circuit said: "While it is necessary and right to restrain or annul the unauthorized acts of its agents by which its interests might be impaired, yet there must come a time, after long-continued acquiescence in public action with knowledge of it, when, in the interest of its citizens, the state itself shall be precluded from despoiling others by the assertion of its original rights." Relying upon this construction of the intention of the state in making this conveyance, this defendant has improved the land in question, and the state ought not now to deny that it was the intention of the state to convey the whole section by its deed.

Upon these facts we find in favor of the defendant, and the action is                                   DISMISSED.

Rose, J., dissenting.

I understand the majority opinion to create a species of estoppel having the virtue of a warranty deed, whereby a private individual may, in the absence of legislative grant or gift, procure from the state of Nebraska, in violation of a public trust, title to public land without buying it or paying for it. The decree of the majority transfers from the state of Nebraska to defendant for private use title to 80 acres of land held for public purposes. The state of Nebraska acquired the land from the United States for internal improvements, and never sold it or parted with the title. One of the purposes of the federal grant was to furnish aid in the construction of railroads. All of the land included in the grant was held by the state of Nebraska in trust. As to the 80-acre tract in controversy the trust has never been executed. The land can only be used by the state of Nebraska for internal improvements. *Koenig v. Omaha & N. W. R. Co.*, 3 Neb. 373. Aiding in the construction of railroads was a far-reaching governmental purpose of the nation and the state. These railroads were by the Constitution made public highways. Const., art. XI, sec. 4. They are now connecting links between a granary of the world and the highways of the nations. Lands held by the state of Nebraska in trust for such improvements should not be frittered away for the benefit of private individuals either by fiction of the law or by unauthorized acts of public officers.

The state is bound only by officers acting pursuant to legislative authority. The board of public lands and buildings did not transfer the title, and other officers were without power to do so. An officer can perform no official act not authorized by written law. His powers are defined by the legislature, and his official acts are disclosed by public records, accessible alike to the state and private individuals. Neglect, unauthorized acts, and violation of duty are wrongs of private individuals, and not official acts binding on the state. What an officer may do on behalf of, or for, the public depends on the law, which private individuals

must know.   Authorized acts alone bind the public.   Those who deal with public officers must do so on statutory terms, without the prospect of procuring an advantage through violation of law, laches, or neglect of official duty.   If the state of Nebraska is under a moral obligation to defendant, the legislature will discharge it upon a proper request.

State property is not subject to taxation.   Const., art. IX, sec. 2.   No officer can assess or collect a tax on state property.   Attempts of this kind are mere wrongful acts of individuals.   Estoppel does not grow out of such conduct. In these respects neither the lapse of the time nor the wrongs of individuals assuming to perform official acts grow into estoppel or title to land.

I take issue with the assertion that the state knew the facts on which the estoppel announced by the majority is based.   The officers who could be charged with knowledge are not mentioned.   There is no attempt to name an officer who could bind the state by knowledge of what was done by defendant or others.

The doctrines of estoppel and laches, unless adopted by statute, are not applicable to the federal or state government.   *United States v. Williams,* 5 McLean (U. S.) 133; *United States v. Thompson,* 98 U. S. 486; *State v. School District,* 34 Kan. 237; *Des Moines v. Harker,* 34 Ia. 84; *United States v. Hoar,* 2 Mason (U. S.) 311.


CORNISH, J., dissenting.

I concur in the dissenting opinion of Judge Rose.   Conceding that a case might arise where a conveyance by the state is ambiguous or susceptible of different constructions as to its meaning and intent, and where a definite construction has been given and acquiesced in generally by the public and the agents of the state for a long period of time, and that in such a case there might arise a conclusive presumption of fact that the construction given was in accordance with the actual intent and purposes of the state, this is not a case where such rule should be applied.   Such

a rule would be one of evidence, not of estoppel, denying to the state the right to show what the facts were.

The maxim, "The king can do no wrong," as legally applied, worked for justice and in truth represented a high ideal of the state. It operated, not only for the benefit of the state, but for the benefit of those dealing with the state. It did not mean that the king was above the laws. It did mean that the state is not amenable to other earthly power, and that, being created for the benefit of the people, its powers cannot be exerted to their prejudice. It meant that the state is incapable, not only of doing wrong, but even of thinking wrong. It was under that rule that it was held that the crown cannot dispense with anything in which a subject has an interest, or make a grant in violation of the common law, or injurious to vested rights. The rule applies with even more force to the modern democratic state, in which not only is the state incapable of doing wrong, but, as a matter of fact, is not disposed to do wrong.

A law, making the state responsible for its conduct like private citizens or corporations, answerable to others, permitting it to be estopped by the wrongful acts of its agent, would not only degrade the state, but would be a law not responding to the situation as it exists. In transactions and controversies between private individuals, self-interest causes the rights of each to be protected. My 25 years of observation and experience in public office convinces me that the interests of the state are not, as a rule, as faithfully safeguarded through its agents as are the interests of private individuals. If the state buys or sells anything, or has work done, we are not surprised to learn that it has at least dealt liberally with others. The eye of the master is always upon his agent to see that he is faithful. Sometimes this is true of the state's agent, sometimes not. It seems to me, if we are to avoid what would in time amount to great losses to the state, we must hold to the rule that the state's agents are our agents, and in dealing with the state through its agents the state is bound only as the agent keeps faithfully within the law. No doubt cases will arise,

possibly the instant case, where it can be said that the state's conduct has done a citizen a wrong. If so, he should present his claim to the state. I served in the legislature two terms, when many claims against the state were presented to it for adjustment. I never knew a member who, from his expressions, appeared to act selfishly or fraudulently in behalf of the state, in consideration of a claim, and I believe there was none.