## PIERSON *v.* ARMSTRONG.

Equity will not grant relief on the ground of mistake, arising from ignorance of the law.

Where a father conveyed to a married daughter certain real estate by deed, in consideration of natural love and affection, upon condition that, should the said daughter die without children living at the time of her decease, the said property should revert to the grantor and his heirs, in the same manner as though no conveyance had ever been made; and where the daughter died, leaving an infant child, who died subsequently, whose father inherited the property, on a bill filed by the grandfather of the child, against its father, alleging that it was the intention of the grandfather, in making the deed to his daughter, that her husband should never, in any event, have any interest in, or control over, the premises, and which deed was executed by him with that understanding, and praying that the complainant may be quieted in his title, and that the cloud cast upon his title, by the deed to the daughter, may be removed, etc.; *Held,* That the complainant was not entitled to relief.

Section 2401 of the Code, which provides, that "when the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party, in which he had reason to suppose the other understood it," does not apply to cases in which there is no mutuality or contract.

The words "have given and granted," in a deed, are sufficient to pass or convey an estate in fee.

The words "to her, and her own proper and legal heirs forever," in the *habendum* of a deed, are sufficient to pass an estate of inheritance.

A deed made upon the consideration of "love and affection," will support an inheritance.

Under the provisions of the Code, real estate may be conveyed by an instrument without seal, and all its qualities and incidents will pass by such an instrument.

A use, under the statutes of Iowa, is an inheritable estate.

Where a father conveyed to a married daughter certain real estate by deed, upon condition that, should the said daughter die without children living at the time of her decease, the said property should revert to the grantor and his heirs; and the daughter died, leaving one child; *Held,* That the condition of the deed was fulfilled, and that the estate, upon the death of the child, passed to its heirs.

*Appeal from the Des Moines District Court.*

ON the 11th day of September, 1851, John Pierson, with his wife Sarah, executed and delivered a deed to Ellen Arm-

strong, which, excluding the formal parts, recites, that they were of the first part, and " Ellen Armstrong, wife of Barnet C. Armstrong, and daughter of said John Pierson and wife," was of the second part, and witnessing " that the said Pierson and wife, for and in consideration of the natural love and affection, they bear to the said Ellen, their daughter, have given and granted to the said Ellen Armstrong, lot No. seventy-five in the city of Burlington, Des Moines county, Iowa, to-gether with all and singular the appurtenances, to her, the said Ellen Armstrong : To have and to hold the same to her, the said Ellen, and to her own proper and legal heirs for-ever ; nevertheless, upon this condition, that should the said Ellen die without children living at the time of her decease, then, and in that event, the said lot of ground hereby con-veyed, shall revert and return to us, and our heirs, in the same manner as if this conveyance had not been made." This deed is acknowledged, and was recorded.   Ellen Arm-strong died about twenty-one months after the date of the deed, leaving an infant child, which died in about seven days after the mother.   Pierson, the father, and Armstrong the husband, now both claim the lot ; the father, by rever-sion, and the husband, by descent from the child.

Prior to the April term, 1854, of the District Court in Des Moines county, Pierson filed his bill in chancery against Arm-strong, alleging in substance, as follows : That being desir-ous of making some provision for the support and mainte-nance of his daughter Ellen, and wife of said Armstrong, much against the will of said petitioner, and being unwilling to place any property in the possession of said Armstrong, or under his control, or to give any property to said Ellen, in such a way as that said Armstrong could at any time, or by any means, obtain any interest in, or control over the same, he applied to an attorney, and desired him to draw a deed or instrument of writing in accordance with the foregoing [views or intentions], and in such a way, as that he could give to said Ellen and her children, and to her and them only, said premises; and in such a way that said Armstrong could never, in any event, have anything to do with said premises;

that said attorney prepared an instrument of writing or deed, which said attorney supposed, and instructed your petitioner, was in accordance with the foregoing [intention], and which would attain the end, answer the purposes, and guard the rights aforesaid, and which would exclude said Armstrong forever, from said premises, or any interest in, or control over the same; that with this explanation and understanding, the petitioner executed said instrument; and that the said Ellen and the defendant, had the same explanation and understanding. The petition, in various forms of language, reiterates the statement, that it was the intention of Pierson, so to give or convey the lot, as that Armstrong should, in no event, acquire it; that this intent was stated to the attorney; that both Ellen and her husband knew it, and concurred in it; that he intended, understood, and thought he was giving the premises to said Ellen and her children as aforesaid, and to her and them only; and so to confine the same, under all circumstances and contingencies, to her and them, and in such a manner, as that, at the death of said Ellen, and upon failure of children as aforesaid, and heirs of her body, to enjoy the same, said grant should cease to operate, and the property revert to the petitioner, as though the deed had not been made; and that if said deed or writing did convey or transfer any right or title in or to said premises in such a manner, as that said Armstrong could, upon any contingency or event, have control over, or property in, said premises, such instrument was made by mistake, and executed and acknowledged by mistake, on the part of all the parties thereto; for none of the parties to the same so understood it, nor did the said attorney or the said Armstrong so understand it. The petition further alleges, that subsequently to the execution of the deed, the daughter Ellen disclaimed the premises, and desired the deed to be delivered up to the petitioner, and that he should retain the same in his possession, and under his control; but that the said deed was concealed away by the said Armstrong, and represented by him as being lost and worthless, until about the time of said Ellen's death, when he caused it to be recorded; that the petitioner has

continued to pay the taxes on the said lot ; that Armstrong is in possession, fraudulently and unjustly holding the same adversely, claiming title thereto, and receiving the rents and profits ; and that said deed casts a cloud over the petitioner's title to said premises, and renders the same unquiet. The prayer of the petition is, that Pierson may be quieted in his title to said premises, and have restitution thereof, and for an account of rent and profits, and for general relief.

To this petition, the defendant demurred, on two grounds :

1. The petition shows no equity on its face,

2. The petition shows the legal title and possession to be in defendant, and shows no equitable right in the complainant.

The District Court sustained the demurrer, and, the complainant not asking to amend, dismissed the bill. From that decree, the complainant now appeals.

*James Green*, for appellant.

*David Rorer*, and *J. C. Hall*, for appellee.

WOODWARD, J.—It must be remarked, in the outset, that neither Ellen, the daughter, nor Armstrong, the husband, are alleged to have had any voice, hand or part in procuring the gift of the lot, nor in the making of the deed, or the manner in which it was made. The gift appears to have been entirely a gratuity of the father, and the manner of it altogether his and his attorney's. It is not altogether clear, what the bill is in its nature, whether a bill to correct a mistake, or to quiet a title. If it is the latter, however, still it is to quiet it, on account of a mistake. The cause has been argued mainly, as an application in chancery to correct a mistake. The complainant and appellant claims relief upon two grounds. First, that the deed is not sufficient to carry the fee; second, that if it is, there was a mistake in the draftsman, in not effecting the intention of the grantor.

We will view the case, first, upon the second ground, supposing the deed sufficient to carry the fee. The grantor

intended that on the death of Ellen and her children, without issue, the title should revert, but it has descended from the child to its father.    Here is a mistake as to the legal effect of the deed.    Is it a mistake of fact, or of law?    It seems difficult to distinguish it from one of law, and whether of fact, or of law, can relief be granted.    The maxim "*igno-rantia legis non excusat,*" is stated throughout the books, as an elementary proposition ; and when you look for the doctrine of law on this subject, you find it to be, that equity will not relieve against a mistake of law.    And Mr. Story says (1 Eq. Juris. § 138), that the present disposition of courts of equity is to narrow, rather than to enlarge, the operation of exceptions.    See 1 Story's Eq. Juris. §§ 111 to 120, 125, 137, 138.    The Supreme Court of the United States, says, "The question then is, ought the court to grant the relief asked for, upon the ground of mistake arising from any ignorance of law?    We hold the general rule to be, that a mistake of this character, is not a ground for reforming a deed, founded on such mistake; and whatever exceptions there may be to this rule, they are not only few in number, but they will be found to have something peculiar in their character."    *Hunt* v. *Rousmaniere,* 1 Peters, 1.    This case will be referred to again more fully.    A statement of it is found in 1 Story's Eq. § 114.    *Shotwell* v. *Murray,* 1 John. Ch. 512 ; *Lyon* v. *Richmond,* 2 Ib. 51, 60 ; *Storrs* v *Barker,* 6 Ib. 166, 169 ; 6 Paige Ch. 189, 202, and authorities.    These books will lead to others.    Many comments might be made upon these authorities, and those which follow, but it would occupy too much time and space.    We will, however, refer to some which are often referred to, with a brief notice of the distinctions and grounds on which they stand.

Two are bound by a bond, and the obligee releases one, supposing by mistake of law, that the other will remain bound.    The obligee was refused relief.    1 Story Eq. § 112. See, also, §§ 113, 114, 115, 116, 134 to 137.    In sections 140 to 156, Mr. Story takes up mistakes of *fact,* in which relief is usually granted, and in sections 152 to 156, he treats as mistakes of fact, the cases of written agreements, by mistake

containing less or more than, or something different from, what the parties intended; and in some of those sections speaks of mistakes of a draftsman.   On all the branches of this subject, there has been some confusion, and probably some conflicting cases, but the law, as we conceive it now to stand, is best summed up in *Hunt* v. *Rousmaniere*, 1 Peters, 1. The court, in that case, says: " There are certain principles of equity applicable to this question, which, as general principles, we hold to be incontrovertible.   The first is, that where an instrument is drawn and executed, which professes, or is intended, to carry into execution, an agreement, whether in writing or by parol, previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement."   Again, page 16, " It is not the intention of the court, in the case now under consideration, to lay it down that there may not be cases in which a court of equity will relieve against a plain mistake, arising from ignorance of law.   But we mean to say, that when the parties, upon deliberation and advice, reject one species of security, and agree to select another, under a misapprehension of the law as to the nature of the security so selected, a court of equity will not, on the ground of such misapprehension, and the insufficiency of such security, in consequence of a subsequent event not foreseen, perhaps, or thought of, direct a new security of a different character to be given, or decree that to be done, which the parties supposed would have been effected by the instrument which was finally agreed upon."

We must here remark, that in the above authorities, and in the cases generally, *mutuality* forms an important element; and although the cases sometimes arise upon an instrument signed but by one, yet that instrument arises out of, and is the expression of, the *agreement* of two minds.   Now, in the case before us, is not the deed the intended expression of but *one* mind, and that the mind of the *grantor,* and should not this fact have some weight in the case ?   It is true that the

grantor says, the others *so understood* it, both before and after execution. But what if they did? They are not said to have sought or procured the gift, or the making of the deed. It was a free gift on his part, and he got it up in the manner which best suited himself. The daughter took only just what he pleased to give, and in such manner as he pleased to give it, and had not a word to say about it. True, she understood it just as her father and his attorney explained it, but there was no *agreement* between them in the sense of contract. And as to Armstrong, he had nothing to do with it; it was *intended* to exclude him; he stood outside; he was an alien to the transaction; and the terms "agreement" and "mutuality" have no application to him. The mistake, if there was one, was in not anticipating further probable or possible events. The attorney provided for the duration of two lives, we will say, that is, of the daughter and her children; he thought that sufficient, and went no further. He did not provide for the contingency of the daughter's issue being cut off.

Let us now look at some of the cases usually cited, in view of the above law and these facts. A full statement of *Champlin* v. *Layton*, 6 Paige's Ch. 189, would require too much space, but the hinge upon which it turns, lies in these words of the chancellor: "The representation of Herring was tantamount to a declaration on the part of the vendors, that neither they, nor those under whom they claimed, had dedicated the lot in question to the public, nor done any other act by which the corporation, or the owners of the adjacent land, would have a right to open a street over the lot, without paying the owner the full value thereof. This declaration of Herring, amounted to a misrepresentation in point of fact." This indicates the ground upon which relief was granted to the purchaser of the lot.

The case of *Gouverneur* v. *Titus*, 6 Paige Ch. 347, was thus: A. sold to B. the north *east* corner of a tract of land, but by mistake in the deed, described it as the north *west* corner. Subsequently to this, C. recovered judgment against A. before the mistake was discovered, which judgment was

a lien by law. B. then conveys to others, by the same erroneous description. C. then buys under his judgment, and a levy made *with the knowledge of the mistake.* A. and B. at some point of time, made a new deed to B.'s vendees, correcting the error. These subsequent purchasers, under B., seek relief against C., and the relief is granted. Here was a clear mistake of *fact,* with notice, and observe by whom the application was made.

The case of *Edwards* v. *Morris,* 1 Ohio, 531, is said, in 11 Ohio, 231, to have been a case of mistake of fact, and not of law. In *McNaughten* v. *Partridge,* 11 Ohio, 223, one partner gave a sealed instrument for the debt of the firm, with the knowledge and assent of the other partners, and under the supposition and intention of them all, that all should be, and were, bound. The obligee alleged, that Hale, the partner who executed the bond, was insolvent, and had gone to parts unknown, and prays relief against the other partners. It was considered, that the other partners were discharged in law by the higher security given by Hale, and which bound him alone. Wood, J., giving the opinion of the court, reasons as though relief should be given, although it was a mistake *of law.* Yet he says, "I do not know that I am authorized by a majority of my brethren to say, that *a mere mistake of law may be corrected;* but I am authorized to say, that relief might be granted in the case at bar, if it depended on the case of mistake made in the bill." The case was ultimately decided upon another ground. The case of *Evants* v. *Admr. of Strode,* 11 Ohio, 480, is more strongly in favor of the present complainant. Evants took from Strode a written agreement for the sale of some land, by *warranty deed.* Strode died, and his administrator filed a bill in the proper court, to obtain authority to make the conveyance. The court decreed the conveyance by warranty deed. The administrator made a deed, but by mistake, or for some other cause, omitted to insert a clause of warranty. The purchaser was ousted, and brought his bill against the administrator and heirs at law of Strode, for relief. The court distinctly call this a mistake of law, and grant relief.

They cite, in addition to the cases above, *Drew* v. *Clark*, Cooke, 374, 380; 1 Hill Abr. 146; 2 Bibb, 449, 168; 6 Rand. 594. Three things are to be noticed in this case; the decree of the court below, was that the conveyance should be by deed of warranty; the purchaser had paid his money for the land; and there was a prior *contract*, which was to be affected by the deed. In the case at bar, these things do not exist. The Code of Iowa, section 240, has, manifestly no relation to this case. *Arnold* v. *Grimes*, 2 G. Greene, 80, in its own features, has no bearing upon the case before us, and the *dicta* quoted from 10 Yerger, 121, applies too loosely to avail much, amid so much that is *adjudication*.

The case of *Wharburton* v. *Lauman*, 2 G. Greene, 420, is much like that of *Gouverneur* v. *Titus*, 6 Paige, 347. B. mortgaged lot *eighteen* to L. by mistake, intending lot *eight*: afterward B. mortgaged lot eight to W., who had notice of the mistake. L. asks relief against W., on the ground of mistake and notice, and it is granted. These cases and references, include all those cited by counsel. We will now refer to two or three, which seem to settle the case before us. 1 Story's Eq., § 112. "Two are bound by a bond, and the obligee releases one, supposing, by a mistake of law, that the other will remain bound." Story says, "The obligee will not be relieved in equity, upon the mere ground of his mistake of the law; for, there is nothing inequitable in the obligor's availing himself of his legal rights, nor in the obligor's insisting upon his release; if they have both acted *bona fide*, and there has been no fraud or imposition on either side, to procure the release." "So, where a party had a power of appointment, and executed it absolutely, without introducing a power of revocation, upon a mistake of law, that being a voluntary deed, it was revocable, relief was denied."

In *Hunt* v. *Rousmaniere*, 8 Wheat, 174, 216; and 1 Peters, 1, the facts were these: R. borrowing money of H., was willing to give him *any security he chose*, by lien or otherwise, on the brig Nereus, and the schooner Industry. H. consulted counsel, who advised to take a power of attorney to sell the vessels, as this would avoid the necessity of

Pierson v. Armstrong.

changing the vessels' papers, and of taking possession of them, on their arrival in port. This was intended to be, and was believed to be, as full and perfect security, as would be given by a deed of mortgage. The power was irrevocable in law, but B. died, and his death terminated it. The bill was filed against B.'s administrator. The defendant demurred. MARSHALL, C. J., in his remarks, says, "In this case, there is no ingredient of fraud." "The instrument taken, is the instrument intended to be taken; but it is, contrary to the expectation of the parties, extinguished by an event not foreseen nor adverted to. Does a court of equity, in such a case, substitute a different instrument for that which has failed to effect its object?" Again: "We find no case precisely in point, and are unwilling, where the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say, that a court of equity is incapable of affording relief." He overrules the demurrer, but, as there are creditors concerned, permits the defendants to withdraw their demurrer, and answer over. This case is cited on both sides of the question—whether chancery will relieve against a mistake of law. And certainly, it is not a clear case. The same case comes up again in 1 Peters, 1. In this, it appears that the former bill had been answered under the leave given by C. J. Marshall, testimony taken, and a hearing had in the Circuit Court, which finally dismissed the bill. On appeal, the Supreme Court of the United States affirmed this decree. This case goes the furthest in support of that at bar, and yet decides against it. There was a clear mistake as to the effect of the instrument; there was a pecuniary consideration involved; there were *two parties* agreeing what should be effected, and what was intended; and yet the highest tribunal in our land refuses the relief, asked. And this decision is cited with approbation, in *Bank U. S.* v. *Daniel*, 12 Peters, 55.

We think, therefore, that to grant the relief sought in the case at bar, would be going, not only beyond any case where it has been granted, but against those in which it has been refused. We do not undertake to lay down any proposition

of law, any further than those we have quoted, and particularly those from 1 Peters, 13.   But although this part of the case is decided, without this further thought, we cannot avoid expressing the strong inclination of our minds, that some weight ought to be given to the fact, that the defendant is an entire stranger to the original transaction, having no voice nor hand in its inception or maturity, and that all that he now has in it is *cast* upon him by the law, he taking only by descent from his child, and that taking by descent from its mother.   The complainant having chosen his own instrument and mode for exercising his liberality, we cannot make a new instrument for him, but must leave him to its legal effect.

And to this branch of the case we come now.   It is said that the deed is not sufficient to pass the estate, and that the condition of it has not been fulfilled.   1. It is said that the deed did not pass the estate, because the words "have given and granted," will not have that effect.   Counsel present this, and the following objections, seriously, and we will consider them, and examine the books referred to by him. *First*—The words are in the *past tense*.   Tomlin's Law Dic. verbum "Grant."   Grants are usually made by these words, "have given, granted, and confirmed."   Mr. Walker, in his Introduction, 377, says: "The statement of the conveyance in the past and present tenses, 'has given' and 'does give,' &c., is an insult to common sense; either tense is sufficient." *Second*—Counsel urges that the words "give" and "grant" are not appropriate to convey the land, and dwells principally on the word "grant," as appropriated to incorporeal property only.   Let us drop this word, then, as carrying only the incorporeal qualities of the estate, and take up the word *give*.   This, at common law, passed an inheritance, a fee, although it was appropriate to a fee tail.   But this deed does not present the line in which the estate shall pass, and we must look at the *habendum*, for this will lessen, enlarge, explain, or qualify the premises.   The *habendum*, then, is "to her and her own proper and legal heirs forever."   4 Kent, 468: Walker's Intro. 380.   The daughter dying, left

the child her heir, and the child dying, left its father as heir. This is in the regular line of "her heirs." But counsel mistake in thinking, that the word "give" was not, at common law, a sufficiently effective word, when not limited to an estate tail. Tom. Law Dic. tit. Conveyance; Walk. Int. 377; 4 Bacon Ab. 76, 77, 82. The latter says, "The words *dedi* and *concessi* are general words, and may amount to a grant, feoffment, gift, release, confirmation, surrender, &c." 2. The counsel hold, that the consideration of "love and affection" will not support an inheritance. For the contrary, see 4 Kent, 462, margin; 1 Story's Eq. § 168; Code of Iowa, § 975. 3. The counsel maintain, that the instrument (or deed) could not operate as a covenant to stand seized to uses, there being no *seal* to it. The seal on private instruments, had become a pure and useless technicality. The Code of Iowa in 1851, abolished the use of them on private instruments, by declaring it to have no effect, and providing that all written contracts should import a consideration. The same statute, in its provisions relating to the transfer of real estate, does not require a seal, and applies the word "deed," in the statute, to an instrument conveying lands, and says, that it does not imply a sealed instrument. See § 26, part 20, 974, 975. We understand that real estate may be conveyed, and by an instrument without a seal, and that all its qualities and incidents will pass without that heretofore important thing, a seal or scrawl. 4. As the court below may probably have held, that this deed could receive effect as a covenant to stand seized to uses, if in no other view, the counsel here maintain, that the defendant could not *inherit a use;* and he refers to the Code, section 1408, which, relating to decedent's estates, says, that "the remaining estate of which the decedent died seized, shall, in the absence of other arrangements by will, descend in equal shares to his children." Then the counsel argues, that a use is not an estate. By the Code, section 26, part 8, the word "land," and the phrases "real estate," and "real property," (in the statute), include lands, tenements, and hereditaments, and all rights

thereto, and interests therein, equitable as well as legal."
By section 26, part 10, the word " property " includes per-
sonal and *real* property; by section 1201, "every convey-
ance of real estate, passes all the interest of the grantor
therein, unless a contrary intent can be reasonably inferred
from the terms used;" by section 1408, "the remaining
estate of which the decedent died seized, shall descend in
equal shares to his children;" and by section 1410, if the
intestate leave no wife (or husband), nor issue, " the whole
shall go to his father." These provisions would seem to em-
brace a use, and to make it inheritable; and more, was not
a use descendible at common law? See 2 Black. Com. 330 ;
4 Kent, 492 ; Prest. on Est. 143 ; 1 Cru. Dig. 323 ; 2 Thos.
Co. 705 and 672; 7 Bac. 77 ; Saund. W. & T. 63, 66, 165 ;
1 Hill Ab. 226 ; 2 Blkf. 434. We incline to the opinion,
therefore, that if this was only a covenant to stand seized
to uses, and the use was executed in the mother, then it
descended to the child, and to the child's heir, who was its
father.

These legal points have not been argued at all, on the one
side, but we have felt ourselves obliged to notice them, wish-
ing, however, that if they were really relied upon, they
might have received a more careful and thorough attention.
When a question like the above, relating to the words,
" given and granted," or that concerning the consideration
of "love and affection," supporting an estate of inheritance
comes up, the doubt naturally arises, whether "there now
remaineth to us" any of this law. Have we not passed by
it, and got beyond it? We have not the various estates
formerly known in England, with their complication of law.
We have no occasion for their former distinction of conveyan-
ces. We, in general, own our land in simple absoluteness, and
need not talk of *allodium*, or *free and common socage*. Sav-
ing the rights of creditors and subsequent *bona fide* pur-
chasers, we enjoy the right to do with it what we please ; not
merely to *sell* it, but to *give* it away. If a deed is without
any consideration, what matters it between grantor and gran-
tee, and their heirs? Has not the grantor the same right to

give away his lot, that he has to give his horse or his watch? Is it not the intent, and tone, and spirit, of all our laws, and institutions, and tenure of lands, that the latter may be conveyed by any words which manifest that purpose, and for any consideration we please, so that others, having legal or equitable claims upon us, are not injured? These questions naturally arise, though they are not presented for formal adjudication. Walk. Int. 377.

But complainant and appellant presents one other matter, which is more serious in its nature. Supposing this deed to convey a fee simple, it is followed in the same instrument, by a condition of defeasance. Should the said Ellen die without children living at her death, the estate is to revert. Is the estate saved, by her leaving *one* child living? Complainant's counsel, cite 2 Fearne on Rem. 377; 1 Story's Eq. § 288; Stor. on Cont. § 561, the last two of which say, that a condition precedent must be strictly performed. But this is a condition subsequent, which is not held up so rigidly. 2 Tom. Law Dict.—" Condition."—Of performance in substance and effect. Ib. 3. No authority seems to be of weight, unless it is upon the use of the particular word " children;" and of these we are referred to none, and can find but very few. Bouv. Law Dict. verb. " plural," says. " Sometimes, however, it may be so expressed that it means only one, as if a man were to devise to another all he was worth, if he, testator, died without children; and he dies leaving one child, the devise would not take effect." For which he refers to the civil law, &c. So on the word " singular " he says, it frequently includes the plural, as a bequest to " my nearest relation," is to all in the same degree. So a bequest to " my heir," by one having three heirs, is extended to all. The word " heirs" is never construed as requiring more than one. A gift or devise to one " and his children," would not be held to call for a plurality, but what *estate* it would give, is not material. It is worthy of note, that this deed is to her and " her heirs," provided, &c., and then will the word " children," restrain the word " heirs;" and even the bill seems to give a construction,

when it uses the language," and in such manner as that at the death of said Ellen, and upon failure of children as aforesaid, and heirs of her body, to enjoy the same, said grant should cease," &c. This view is favored also by the case of *McGregor* v. *Toomer*, 2 Strob. Eq. 57. The case of *Glass* v. *McCloud*, decided by this court, also bears upon similar questions. The object of this gift, would seem to apply to one child as well as to several. The language must be taken to mean the same as if it was, "if the said Ellen die without *any* children living," &c.

The judgment of the District Court is therefore affirmed, but the cause will be remanded, with leave to the complainant to amend, if he sees cause.