CAROLINE K. RICKMAN

*v.*

FRANCES BRICK MEIER *et al.*

*Opinion filed December 22, 1904—Rehearing denied Feb. 15, 1905.*

1. FRAUD—*when deed obtained by undue influence may be set aside.* A deed obtained by undue influence may be set aside after the grantor's death by those succeeding to his rights, unless the grantor has ratified the deed at a time when the undue influence had ceased to operate.

2. SAME—*when conveyance from a parent to child is presumed unfair.* Where a fiduciary relation exists between parent and child in which the child is the dominating party, if the latter causes to be

prepared and executed a deed conveying to him property of the parent as a gift or for a grossly inadequate consideration, the presumption arises that the deed was obtained through undue influence of the child, and the burden is upon him to show the contrary.

3. SAME—*when a transfer of personal property will be deemed free from undue influence.* A transfer of personal property from parent to child, even though the latter is the dominant party to the fiduciary relation between them, will be deemed to be free from undue influence where the evidence shows the parent was the active party in making the transfer, under circumstances tending to show uncontrolled volition.

4. WILLS—*the word "bequeath" may denote a gift of real estate.* Although the word "devise" is commonly used to denote a gift of real estate, yet such estate may pass under a residuary clause of a will providing that "all the rest, residue and remainder of my estate, including household furniture, clothing, etc., I give and bequeath to the four children of my deceased son."

5. SAME—*when particular real estate passes under the residuary clause.* Where a will provides for a particular disposition of the proceeds of certain real estate to be sold after the death of the testatrix, if the property is sold by her before her death and a codicil executed reciting that fact and the advancement of certain of the specified legacies out of the proceeds, "leaving the rest of my said will as drawn," other real estate afterwards purchased is not subject to the particular provision but passes under the general residuary clause, particularly if there be no proof that it was purchased with the proceeds of the other property.

6. ESTOPPEL—*when a party is estopped to urge lack of proof to support finding.* If the defendant in a chancery case files an answer claiming property to be his own, which answer is adopted by his wife as her own after the husband's death, the wife is estopped to urge a want of proof to support a finding that she acquired title to the property *pendente lite,* even though the deed from her husband to her is dated prior to the institution of the suit.

APPEAL from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

On February 24, 1890, Christiana O'Connor was the owner of three houses on Clark street and three houses on Rush street, together with the real estate on which said houses were erected, in the city of Chicago. On that date, she executed a deed, her husband joining therein with her, conveying all of said property to John F. Brick, her son, in

trust for the purposes of having him collect the rents, make necessary improvements, pay taxes and insurance and turn over to her the net rents during her life. The deed further recited that upon the written request of the grantor for that purpose, the grantee should convey said premises or any part thereof to such person and for such sum as she might designate in said request, and should also immediately turn over to her the net proceeds of said sale; and if said premises, or any part thereof, should remain undisposed of at the time of her death that he should make such disposition of the property as she should by her will direct.

On March 29, 1890, she executed a will, which recited that she thereby intended to dispose of all her property. The first clause directed the sale of the Rush street property. The next five clauses disposed of the proceeds of such sale as follows: The second clause of the will provided for the payment of her debts and funeral expenses; the third gave to Elizabeth Brick, widow of her deceased son Frank, $1000; the fourth to Barbara Brick, the widow of her deceased son Christian, $1000; the fifth to Mary Charbonnier, the daughter of her first husband, $1000; the sixth disposed of the balance of the proceeds arising from the sale of the Rush street property, after the payment of the above debts and bequests, as follows: to John F. Brick one-third thereof; to Joseph Brick, her grandson, one-third thereof; and to the four children of her deceased son Frank, one-third thereof. The seventh, eighth and ninth clauses each disposed of one of the Clark street houses to John F. Brick, Joseph Brick and the four children of Frank Brick, her deceased son, respectively; and John F. Brick was directed to convey the same to the respective devisees. The tenth clause disposed of two pictures, and the eleventh clause gives and bequeaths the residue of the estate to the four children of her deceased son, Frank Brick. By the twelfth clause, John F. Brick and Frank Spohrer were nominated executors of the will without bond,

On April 6, 1891, Christiana O'Connor directed the sale of the Rush street property by her trustee for $26,643, and John F. Brick, in compliance with that direction, conveyed the same to the purchaser, and the proceeds were turned over to Mrs. O'Connor. On June 8 of the same year, she made a codicil to her will, which, after reciting that she had sold the Rush street property and had given to Elizabeth Brick, Barbara Brick and Mary Charbonnier each $1000, proceeded as follows: "I therefore do hereby revoke the bequests made in and by paragraphs numbered third, fourth and fifth in my last will and testament * * * to the above named parties, leaving the rest of my said last will as drawn."

On August 24, 1899, she purchased certain real estate on Barry avenue, in the city of Chicago, which is the real estate involved in this suit, and is referred to in this litigation as the Barry avenue property, paying therefor $14,000, and afterwards, on July 27, 1902, together with her husband, delivered a deed for the same to John F. Brick for an expressed consideration of one dollar. At the time she executed this deed she was confined to her bed, suffering from tuberculosis. She was in constant pain and never thereafter left her bed. Her death occurred on September 12, 1902. She was then seventy-two years of age. John F. Brick was her only living child. He was a cripple and in poor health. He resided in one of the Clark street houses, next to that occupied by his mother, and during her illness he and his wife, now Caroline K. Rickman, spent a large portion of their time at her home. On the day the deed to the Barry avenue property was signed, John F. Brick called in the notary who prepared the deed and who took the grantor's acknowledgment thereto, and instructed him how to draw the deed and paid him for his services. He was also present at the execution of the instrument, and took an active part in securing her signature thereto. Mrs. O'Connor then lived separate and apart from O'Connor, her second husband, and he came to her home to join in this deed at the request of the grantee.

On July 31, 1902, Christiana O'Connor had money on deposit with the Hibernian Banking Association and with the Illinois Trust and Savings Bank, aggregating $2196.30, and on that date she transferred the same to her son, John F. Brick, by delivering to him checks and receipts to the banks therefor, and he withdrew the money from the latter bank and deposited all of it with the Hibernian Banking Association to his own credit.

Christiana O'Connor left her surviving, as her only heirs-at-law, Frances B. Meier, Clara B. Aubert, Arthur Brick and Viola Brick, the children of Frank Brick, a deceased son, who were complainants below and are appellees here, and John F. Brick, her only surviving son; Joseph Brick, the only child of Christian Brick, a deceased son, and her husband, Patrick J. O'Connor, who were defendants below. On November 8, 1902, the will and codicil, above mentioned, were admitted to probate by the county court of Cook county, and John F. Brick was appointed executor thereof. On January 13, 1903, the bill herein was filed by the four children of Frank Brick, deceased, above named, in the superior court of Cook county, against John F. Brick, individually and as trustee of Christiana O'Connor and as executor of the last will and testament of Christiana O'Connor, deceased, Caroline Brick, wife of John F. Brick, Joseph Brick, Hibernian Banking Association, and Fidelity Safe Deposit Company. The bill, after setting out the above facts, charged that John F. Brick was the trustee, agent and confidential adviser of Christiana O'Connor in all her business matters, and that a confidential relation existed between them; that John F. Brick abused the confidence reposed in him, and by fraud and undue influence obtained the conveyance of the Barry avenue property from her and the transfer of the money on deposit with the two banks above named to him, and the bill prayed that the deed to John F. Brick for the Barry avenue property be declared null and void and that the title to that property be adjudged in the complainants as residuary lega-

tees of the deceased under the eleventh clause of her will; also that the money on deposit with the Hibernian Banking Association be adjudged to be funds belonging to the estate of said deceased, and that it be perpetually enjoined from paying the same or any part thereof out upon the order of John F. Brick. The defendants filed separate answers. John F. Brick admitted all the allegations of the bill except those charging fraud and undue influence, which he denied. Joseph Brick admitted all allegations except those claiming that the property passed to the complainants under the eleventh clause of the will, and he set up that the property was held in trust by John F. Brick to be distributed according to the provisions of the sixth clause of the will.

After the bill was filed, and on June 23, 1903, John F. Brick died. A supplemental bill was filed suggesting his death and alleging that Arthur Brick had been appointed administrator *de bonis non* with the will annexed of the estate of Christiana O'Connor, and that Caroline K. Brick claims to be the purchaser of all right, title and interest of John F. Brick in all his real and personal property, and alleging that such purchase was made with actual notice of the rights and claims of complainants and during the pendency of this litigation. Caroline K. Brick answered the supplemental bill, admitting that she purchased all the property from her husband, but denying that it was with actual notice of the rights and claims of complainants or during the pendency of the suit. The evidence showed that $2000 of the money in the Hibernian Banking Association was transferred from the account of John F. Brick to that of his wife on November 20, 1902, and that the Barry avenue property was conveyed to her by deed dated November 19, 1902, acknowledged on the same date and recorded July 1, 1903.

On the same day the bill above mentioned was filed, Joseph Brick filed a bill in the same court, setting out the facts substantially as contained in the bill to which he was made a defendant, except that he averred that the Barry ave-

nue property was purchased with funds derived from the sale of the Rush street property, and was conveyed to John F. Brick to hold in trust for disposition under the sixth clause of the will of Christiana O'Connor. Issues were made up on this bill, and thereafter the cause in which Joseph Brick was complainant was consolidated with the one first hereinabove mentioned.

The consolidated causes were referred to the master to take the evidence and report his conclusions to the court. After the evidence had been heard by the master but before his report had been filed in court, the complainants in the cause first hereinabove mentioned amended their bill and charged that there was no valid delivery of the deed to John F. Brick. The master found the allegations of the bill in which Frances B. Meier *et al.* were complainants to be true; also that the property and money were obtained by John F. Brick by undue influence amounting to fraud, and were transferred and conveyed to his wife *pendente lite* and with knowledge on the part of the wife of the infirmity of her grantor's title, and recommended that relief be granted as prayed for in the bill. The master found the bill filed by Joseph Brick to be without equity, and recommended that it be dismissed. A decree was accordingly entered by the court declaring the deed from Christiana O'Connor to John F. Brick null and void, the deed from John F. Brick to his wife, now Caroline K. Rickman, to have been taken by the latter with knowledge of the rights and claims of the complainants therein and during the pendency of this suit, and that the complainants in the bill first hereinabove referred to were entitled to said property under the eleventh clause of the will of Christiana O'Connor, and ordering Caroline K. Rickman to convey the same to those complainants within twenty days, and that in default thereof the master execute and deliver to them a deed for the said premises; also ordering the Hibernian Banking Association to turn over to Arthur Brick as administrator *de bonis non* with the will

annexed of the estate of Christiana O'Connor, deceased, the $2000 on deposit with it in the name of Caroline K. Rickman, which had been transferred to her by John F. Brick from his account and which was part of the money received by him from his mother. The decree also dismissed the bill filed by Joseph Brick for want of equity.

Caroline K. Rickman appeals from that decree to this court, and here urges that the evidence for appellant is sufficient to rebut any presumption of undue influence on the part of John F. Brick in obtaining the property in question; that that property was not the subject matter of any trust, and that under the circumstances shown by the evidence in the case, fraud is not to be presumed between parent and child; also that even though undue influence was proven, the conveyance was only voidable at the election of Mrs. O'Connor, and she having failed to repudiate it during her lifetime, the same cannot now be set aside at the instance of the complainants in the bill. It is also contended that if the decree is supported by the evidence, it is nevertheless erroneous in finding that the title to the Barry avenue property is in the complainants alone; that in any event it should only have found them entitled to one-third of the property on the theory that— the deed failing—the property passes under the sixth clause of the will and not under the eleventh or residuary clause.

ERNEST SAUNDERS, for appellant.

NILES E. OLSEN, and LOESCH BROS. & HOWELL, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The gifts made by the deceased to John F. Brick are attacked principally on the ground that they were obtained through the undue influence of the donee.

Appellant argues that a deed or gift obtained through undue influence is not void, but voidable at the election of

the grantor or donor alone, and that as Christiana O'Connor did not exercise her option to declare the gifts void in her lifetime, they cannot be attacked by her representatives after her death, and reliance is placed upon the case of *Burt* v. *Quisenberry,* 132 Ill. 385. In that case it is held that though a deed be obtained by undue influence, the party executing it may elect to re-affirm it when the influence under which it was obtained has entirely ceased; and if he do so, then it becomes valid and binding precisely as though it had been the result of the uncontrolled volition of the grantor in the first instance; and in that case it was held that the attack made on the deeds could not avail, for the reason that the grantor had ratified them at a time when he was entirely free from the influence which it was charged had been unduly exercised to secure their execution.

The law is that where a deed or other conveyance has been procured by undue influence, if it be not ratified by the party making it after the undue influence has ceased to operate, it may be set aside after his death at the suit of those who succeed to his rights. Bigelow on the Law of Fraud, p. 268; *Walker* v. *Smith,* 29 Beav. 394; *LeGendre* v. *Goodridge,* 46 N. J. Eq. 419; *Prentice* v. *Achorn,* 2 Paige, 30; *Lins* v. *Lendhardt,* 127 Mo. 271; *Martin* v. *Bolton,* 75 Ind. 275.

Christiana O'Connor was confined to her room and bed from July 1, 1902, to September 12, 1902, when she died. During this time she grew weaker, both physically and mentally, except that she would rally at times for a day or two. John F. Brick was her only surviving child. He lived next door to her and was without any occupation except caring for her and assisting her in her business, and during the period last mentioned she seems to have relied almost entirely upon him, both to care for her in her illness and to attend to her affairs. She had made him trustee for her by a deed which conveyed to him in trust real estate of great value, comprising by far the greater portion of her property.

He was to be one of the executors of her will without bond. She rented a box in a safety deposit vault and had given him the key and written authority by virtue of which he had access to that box and all her valuable papers, including her will, at all times. The relations between them, business, personal and domestic, were exceedingly close and intimate. He was her confidant and adviser. Age and disease had seriously weakened her physical and mental powers, and while not mentally disqualified to transact such business as conveying property, yet the weakness of her mind was such as led her to rely upon and be guided by the judgment of her son. We are satisfied that at all times after she was confined to her room a fiduciary relation existed between them in which he was the dominant and controlling factor and she the trusting and dependent one. The scrivener prepared the deed in question at his instance and under his direction, and he procured·its execution by his mother.

A gift made by the parent to the child on account of the affection of the former for the latter, even where it is made at the solicitation of the child, is not the object of suspicion, and there is no presumption against its validity unless the relation between them is something more than the ordinary relation of parent and child. *Burt* v. *Quisenberry, supra; Oliphant* v. *Liversidge,* 142 Ill. 160; *Francis* v. *Wilkinson,* 147 id. 370.

Where, however, the natural position of the parties has become reversed, where the parent defers to,·trusts in and yields to the child, where there exists between them what in law is termed· a fiduciary relation, in which the parent is dominated by the child, and where the child prepares, or causes to be prepared and executed, an instrument conveying to him property of the parent, as a gift or upon a grossly inadequate consideration, the presumption arises that ·the transfer was obtained through his undue influence, and the burden then rests upon him to show that the conveyance was the result of full and free deliberation on the part of the

parent. This is not peculiar to transactions where the parties are parent and child, but is the law in any case where a fiduciary relation exists, where the conveyance is from the dependent to the dominant party, and where the donee or grantee prepares or procures the preparation and execution of the deed or other instrument; and the rule is applied, under such circumstances, wherever that relation exists, no matter whether the parties are related by blood or not. 1 Woerner on American Law of Administration, (2d ed.) sec. 32; Bigelow on the Law of Fraud, p. 361; *Thomas* v. *Whitney,* 186 Ill. 225; *Dowie* v. *Driscoll,* 203 id. 480; *Weston* v. *Teufel, ante,* p. 291; *Richmond's Appeal,* 59 Conn. 226; *Coghill* v. *Kennedy,* 119 Ala. 641.

The deed conveying the Barry avenue property was written by Lewis A. Rheinhardt, a notary public and law clerk, who lived in the same building in which John F. Brick resided. On the day on which it was executed, Mr. Rheinhardt prepared a deed for signature in accordance with the directions of John F. Brick. It was taken by Rheinhardt to Mrs. O'Connor's room, where she was in bed. John F. was present. She attempted to sign, but was unable to do so and blotted the instrument so that it was deemed advisable to prepare another. When the second was prepared, the same thing occurred, and the scrivener thereupon prepared a third. In the meantime a stimulant had been administered to the sick woman, and when the third document was presented to her she was able to attach her signature. The notary did not read either of these instruments to her and says he presumed "she must have understood the purport of the execution of these deeds, as John informed me it was pre-arranged." Her failure to sign the first two instruments presented resulted partly from physical weakness and partly from a confused mind which made her uncertain about forming the characters in writing her name or about the order in which they should be written. When the first deed was presented to her, John said: "Mother, Mr. Rheinhardt has got this deed now

ready for you to sign." After she had marred and failed to sign it, the son said that she had spoiled it, and, addressing Rheinhardt in her presence, continued: "Well, you may as well get through it while you are here. You can go up-stairs and make another deed." When the notary returned, the son said to her: "Mr. Rheinhardt has that second deed made out now and you want to try and sign this one and don't spoil it." When she had failed to sign the second and had so blotted it that the preparation of the third was rendered necessary, her husband, who was present, said: "Let it go for to-day; she is in a weakened condition." John F. said to her: "Don't you think you can sign that to-day?" and the mother responded: "Well, we might just as well get through with it." The stimulant was taken by her at the instance of her son, who suggested that it would make her feel better and steady her nerves.

The testimony does not satisfy us that this woman knew what she was signing. The notary says: "I did not read the deed to her; she had confidence enough in me, because I had known her for a long time, that when the deed was made out it was all right." She did not read and there is no evidence that she was in any way made acquainted with the description of the property contained in the deed. The proof offered by appellant fails to show that the execution of the deed was the result of full and free deliberation on the part of the grantor therein.

On the occasion of the transfer of the money in bank, Rheinhardt went to Mrs. O'Connor's room in response to a message which she sent to him by the wife of John F. Brick. When he reached there, he found that she was better and was unusually bright, and made some witty remark to him in the German language. She told him that she had sent for him, as she wanted to see him before he started down town; that she had money in the Hibernian Bank and in the Illinois Trust and Savings Bank; that she wanted John to have that money because he was a cripple and could not work,

and wanted Rheinhardt to go down with John and do whatever was necessary to be done to put that money in John's name. In accordance with this request, Rheinhardt and John went to the Illinois Trust and Savings Bank and later to the Hibernian Bank. In each instance they acquainted the bank officers with the fact that Mrs. O'Connor was sick and unable to come down and that she wanted to transfer the money on deposit to John. The money in each bank was in the savings department, not subject to an ordinary check, and, for the purpose of making the transfer, in each instance a clerk filled up a check payable to John for the amount on deposit and an instrument in the nature of a receipt running to the bank, which is termed a release, both to be signed by Mrs. O'Connor. They then returned. Mrs. O'Connor signed them and said to John: "Now you can go down and get the money," and he took the checks and releases and had the money transferred to his own account.

So far as the money thus transferred to the son is concerned, we think the evidence overthrows any presumption arising from the fiduciary relation. It seems that the mother was here the active party in making the transfer and having the papers evidencing the transaction drawn instead of the son, as in the case of the deed; and while the gift of the money was no doubt induced by the affection which she had for her son, and perhaps was made in response to his request, yet we think the circumstances surrounding the transaction, as disclosed by the evidence, show that the gift resulted from her uncontrolled volition.

The court below held that the real estate, which the deed in question purported to convey, passed to the complainants in the original bill, under the residuary clause of the will, which reads as follows:

"All the rest, residue and remainder of my estate, including household furniture, clothing, etc., I give and bequeath to the four children of my deceased son, Frank Brick."

At the time the will was drawn, the testatrix did not own this Barry avenue property, and appellant's view seems to be that this property should be held to pass under those provisions of the will which direct a disposition of the proceeds of the Rush street property, which had been sold after the execution of the will, on the theory that the Barry avenue property was purchased with the proceeds of the Rush street property, and that it does not pass under the residuary clause for the further reason that the words of gift therein do not include the word "devise."

According to the will, the Rush street property was to be sold after the death of the testatrix, and the proceeds were to be used to pay her debts and funeral expenses, to pay $1000 to each one of three legatees, and the balance of such proceeds was, by the sixth clause, to be divided, one-third to John F. Brick, one-third to Joseph Brick and one-third to the children of Frank Brick who should survive the testatrix. The three legacies of $1000 each she advanced to the legatees in her lifetime. After conveying the Rush street property, she executed a codicil, reciting the fact that that property had been conveyed, and the advancements made and revoking the three legacies of $1000 each, and then providing "leaving the rest of my said will as drawn." When this codicil was executed she had not yet purchased the Barry avenue property. The proceeds of the Rush street property seem then to have been personalty and there is no competent evidence tracing such proceeds into the Barry avenue property. There is competent evidence establishing the fact that she disposed of the one property and some years later acquired the other, but this is not sufficient to show that the second was purchased with money arising from the first.

Under these circumstances this property passes under the residuary clause although the word "devise" was not used.

This court has heretofore held that while the word "devise" is usually employed to denote a gift by will of real

estate or an interest therein, the word "bequest" may mean any gift by will whether it consists of personal or real property. (*Evans* v. *Price,* 118 Ill. 593.) Following this reasoning, it would seem that the use of the word "bequeath" instead of "devise" would not necessarily lead to the conclusion that the property which the testatrix thereby intended to dispose of was personalty; but be that as it may, the word "bequeath" in this residuary clause is coupled with the word "give," which is of the largest possible signification, and is applicable as well to real as personal estate. *Hooper* v. *Hooper,* 9 Cush. 129; *Pierson* v. *Armstrong,* 1 Iowa, 282.

The decree of the court below finds that the appellant received her deed from John F. Brick *pendente lite.* It is assigned as error that there is no evidence to warrant that finding. The deed bears date prior to the beginning of this proceeding. There is no evidence showing when it was delivered save the presumption that arises from its date, and it is urged that in the absence of other evidence showing when her deed was delivered to her, it was erroneous to find that she took title after the beginning of this suit.

The answer of John F. Brick, filed January 30, 1903, admits that he claims to be the owner of the Barry avenue property by reason of the conveyance to him, and says nothing in reference to having transferred the title to his wife. After the death of John F. Brick, the appellant adopted his answer as her answer, and having adopted that answer with that averment therein showing that he claimed to be the owner of that property after the beginning of this suit by virtue of the conveyance from his mother, we think she cannot now be heard to say that the court was not warranted in finding that she took title pending this litigation.

The decree of the superior court will be reversed and the cause will be remanded to that court with directions to enter a decree dismissing the bill filed by the residuary legatees or devisees for want of equity in so far as that bill seeks to set aside the gift of the money in bank by Christiana O'Connor

to John F. Brick, and dissolving the injunction in so far as Caroline K. Rickman, formerly Caroline Brick, is restrained from transferring, receiving or checking out the portion of such money now in bank; and authorizing said Caroline K. Rickman to draw or check said portion out of the bank of the Hibernian Banking Association wherein it is now deposited, and authorizing said association to pay the same to Caroline K. Rickman or upon her order. The decree to be so entered to be in all other respects identical with the decree from which this appeal is prosecuted.

*Reversed and remanded, with directions.*