(No. 16673.—Decree affirmed.)
WILLIAM A. BRITTAIN *et al.* Appellants, *vs.* ELIZABETH H. FARRINGTON *et al.* Appellees.

*Opinion filed October 28, 1925—Rehearing denied December 3, 1925.*

1. WILLS—*words and clauses will be retained, if possible.* All words and clauses in a will must be considered as intended to have some meaning and must be given effect, where possible, in arriving at the testator's intention, and no clause or words can be rejected except from absolute necessity.

2. SAME—*courts favor the early vesting of estates.* The courts will adopt such a construction of a will as will give an estate of inheritance to the first taker unless there are other clauses of the will clearly disclosing an intention on the part of the testator to · limit or qualify the estate devised.

3. SAME—*when "death without issue" means death in testator's lifetime.* Where a testator by different clauses of his will divides his property among his children, unconditionally, but in a subsequent clause provides that should any of such children "die without issue, or should their death precede mine," the share of such child shall be divided among the other surviving heirs, the words "die without issue" will be construed to mean death during the lifetime of the testator, where the language of the whole will requires such construction to carry out the testator's intention.

4. SAME—*"bequest" may apply to real estate.* The term "bequest," as used in a will, may mean any gift by will, whether of personal or real property, as may be shown by the intention of the testator.

5. SAME—*intention must be clear for devise to be cut down by subsequent clause.* Where an estate in fee is given by one clause in a will it cannot be cut down or taken away by a later clause except by clear and unambiguous language.

DUNCAN, J., dissenting.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

WILLIAM and BARRY MUMFORD, for appellants.

CAPPS & WEAVER, PAUL F. GROTE, and WILLIAMS & WILLIAMS, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants filed a bill in the circuit court of Pike county seeking partition of two tracts of land, one of forty acres and the other of slightly less than seven acres. They set out in the bill that they are the heirs-at-law of John Brittain, who during his lifetime was the owner of seven tracts of land of forty acres each. He died in 1878, leaving a last will and testament. By the third, fourth, fifth, sixth, seventh and eighth clauses of his will he devised in each a specifically described forty acres of land and a one-sixth part of another forty acres to five of his children and his grandson, George R. Petty. The devise in the sixth clause was to Julia A. Capps, a daughter, who went into possession and retained the use and control of the land until she conveyed it by warranty deed. She died in 1917.

In 1923 the appellants filed the original bill in this case, in which they claim that under the terms of the will of John Brittain the forty-seven acres of the land devised to Julia A. Capps became vested in them on her death. It is alleged in the bill that by the terms of the will she took a base or determinable fee in the land subject to a limitation

over in the ninth clause to the other heirs of the testator in case she died at any time without having had issue; that she died without having had issue, and that appellants are therefore entitled to partition of the land and a decree of the court declaring the fee to be in them.

A stipulation as to the facts concerning the making of the will and the conditions surrounding the testator at the time it was executed was entered into and filed. On consideration of this stipulation and the bill the court dismissed the bill for want of equity, holding that the heirs of Brittain had no interest in this property, but that appellees, who are holders by *mesne* conveyances from Julia A. Capps, are the owners of the land. Appellants bring the cause here, assigning error upon the construction of the will by the chancellor.

It appears from the stipulation that at the time of the execution of the will Brittain had seven living children and one grandson, the son of a deceased daughter. It also appears from the stipulation that Brittain, after the death of the mother of his seven children, had married Edna C. White, and that prior to the marriage there was an ante-nuptial agreement entered into, whereby she was to receive the sum of $1000 at his death in full of all her interest in his estate.

The will was executed in 1876. At that time three of the testator's children, including Julia A. Capps, were married, and the other four children and the grandchild, who was a minor, were unmarried. But one of the living children of the testator had issue at the time of the making of the will. The will consists of thirteen clauses. The first provides for the payment of his debts and funeral expenses and the second for the payment of $1000 to his wife under the ante-nuptial agreement. As we have seen, the clauses from three to eight, inclusive, in identical language devised tracts of forty acres and a one-sixth interest in another forty to each of the children and the grandson. The sixth

clause, devising the land to Mrs. Capps, is as follows: "I devise and bequeath unto my daughter, Julia A. Capps, the southwest quarter of the northeast quarter of section 9 in township 6 south of range 4 west, also one-sixth part of the northwest quarter," (describing another forty-acre tract,) etc. The ninth clause of the will is as follows: "It is also my will that should any of my children to whom bequests are made, die without issue, or should their death precede mine, that such share or bequest be divided equally share and share alike between the other heirs surviving." By the tenth clause he bequeathes to his son William the sum of $2162.50, to be held in trust by his executor and the interest paid annually, or otherwise, as the trustees deem best. No final disposition is made of this trust fund after the life of William. By the eleventh clause he bequeathes a like sum to his son Benjamin in a like manner, but directs that said son should receive the interest on the amount annually for five consecutive years, and thereafter be paid the principal sum at the rate of $400 per year until it is paid. Neither William nor Benjamin receives any land. The twelfth clause provides as follows: "It is furthermore my will that in consideration of the bequests in real estate to my said heirs, and in order to make them all equal, that Carolina Petty shall be paid the sum of $362.49 and that Julia A. Capps, Alfred B. Brittain and Tyler Brittain [children] each pay the sum of $937.50; that George R. Petty pay the sum of $1437.50 and that Elizabeth H. Brittain pay the sum of $437.50. The amounts to be paid by my said heirs into my estate and to be received by Carolina Petty from my estate is deemed by me to equalize the amount received by each in the distribution of real estate." The thirteenth clause provides that the residue of personal property remaining after the payment of debts be divided among the testator's heirs, share and share alike. Julia Capps died without having had issue.

The clauses of the will principally involved here are the sixth and ninth. It is conceded by all that the sixth clause gives a fee simple absolute in the land involved in this lawsuit to Julia A. Capps, and the question in the case therefore resolves itself about the construction of the ninth clause of the will. Appellants contend that by this clause the fee simple estate given to Mrs. Capps was cut down to a base or determinable fee, the condition of the devise over being that Mrs. Capps die at any time without having had issue. Appellees, on the other hand, contend that the ninth clause refers to death of the children of the testator, or their issue, during the lifetime of the testator; that if this is not so, it does not with sufficient clarity disclose any other intention to cut down the fee given to Mrs. Capps by the sixth clause of the will.

The particular words of the ninth clause requiring construction are, "die without issue," and, "or should their death precede mine." In the construction of this clause it becomes important to determine the antecedent of the pronoun "their,"—in other words, whether the testator by the use of that pronoun referred to his children or to their issue. Appellants contend that it refers to the former, while appellees contend that it must refer to the issue of the testator's children, for the reason that any other construction would bring about an unreasonable result; that the testator intended that in case any of his children should die in his lifetime without issue, or should any child dying in his lifetime leave issue which predeceased the testator, the limitation over was to take effect.

It is a rule to be observed in the construction of wills, that all words and clauses must be considered as intended to have some meaning, and must be given effect, where possible, in arriving at the intention of the testator. No clause or words of a will can .be rejected except from absolute necessity. (*Miller* v. *Wick,* 311 Ill. 269; *Hollenbaugh* v. *Smith,* 296 id. 558; *Mittel* v. *Karl,* 133 id. 65.) If the

pronoun "their" takes as its antecedent the word "children," then the ninth clause must be read as though it said, "that should any of my children to whom bequests are made, die without issue or should any of my children die during my lifetime, then that share or bequest shall be divided," etc. Under such a construction the devise over would come into effect in case a child of the testator died during his lifetime, even though such child left issue surviving. Under such a construction the result would be that the surviving issue of the child who predeceased the testator, instead of taking the property devised to its parent, must divide that property, share and share alike, with all the other surviving heirs of the testator. It seems clear from a consideration of the entire will and the circumstances surrounding the testator at the time the will was executed that such a result could not have been contemplated by him. It cannot be said that the ninth clause of the will so clearly shows that to be his intention as to require such a construction notwithstanding the general scheme of equal distribution of his property as shown by other clauses of the will, particularly the twelfth clause, which shows an evident attempt to equalize the distribution of his property. By construing the latter part of the ninth clause as though it read, "or should the death of the issue of any child precede mine," it will be seen that in case any of the testator's children to whom bequests had been made die before the death of the testator, leaving no issue who survived the testator, then the limitation over is to take effect. This, it seems to us, is the construction of the language of the clause that is more in conformity with the expressed intention of the testator.

We come, then, to consider whether the language, "die without issue," refers to death during the life of the testator or death at any time. We are of the opinion that this language should be construed as meaning that in case any child of the testator die without issue during the life of the testator, or should a child so die leaving issue which does

not survive the testator, then the devise over is to take effect. By this means the intention of the testator as expressed throughout the different clauses of the will is carried out and the scheme of distribution of his property is thereby accomplished. That such was the intention of the testator is strongly evidenced by the fact that by six clauses of his will he devised to five of his children and the grandchild certain specific tracts of land in fee simple, without qualification or limitation. The only qualification in the whole will is that to be found in the ninth clause referred to. By the tenth clause he bequeathed a certain sum of money in trust for his son William and by the eleventh clause a sum in trust for his son Benjamin, providing, however, that the principal be paid over after five years at the rate of $400 per year until all is paid. This was a bequest to one of his children as that term is used in the ninth section, but it cannot be said that the death of Benjamin without issue at any time would mean that the gift over to the heirs of the testator would follow, for the reason that if Benjamin lives a little more than nine years after the death of the testator he will have received the entire fund without condition.

It will be noted that the ninth clause of the will refers to bequests. The term "bequest," as used in a will, may mean any gift by will, whether of personal or real property, as may be shown by the intention of the testator. *Rickman* v. *Meier,* 213 Ill. 507; *Evans* v. *Price,* 118 id. 593.

While the general rule is that the words "die without issue" are to be taken as referring to death either before or after the death of the testator, this rule does not apply where the language of the whole will requires a different construction. (*Fifer* v. *Allen,* 228 Ill. 507.) Where the context of the instrument is such as to show clearly that the testator intended the phrase "die without issue" to mean that if the first taker die without issue during the lifetime of the testator the second taker shall stand in his place and prevent a lapse, those words are taken to mean death during the

life of the testator. (*Kohtz* v. *Eldred,* 208 Ill. 60; *Fish-back* v. *Joesting,* 183 id. 463; *Chapin* v. *Crow,* 147 id. 219; *Duryea* v. *Duryea,* 85 id. 41.) It is the settled policy of the courts to adopt the construction of a will that will give an estate of inheritance to the first devisee unless other limiting or disqualifying clauses in the will disclose clearly and unequivocally that it was the intention of the testator to limit or qualify the estate granted. (*Becker* v. *Becker,* 206 Ill. 53; *Scofield* v. *Olcott,* 120 id. 362; *Kohtz* v. *Eldred, supra.*) All rules in the construction of wills yield to the intention of the testator plainly expressed. *Fifer* v. *Allen, supra; Spencer* v. *Spencer,* 268 Ill. 332.

From a consideration of the whole will we are of the opinion that it was the intention of the testator that in case Julia A. Capps survived him she should take the fee simple title to the land devised. This result is likewise to be reached by a well established rule in the construction of wills, that where an estate is given by a will it cannot be cut down or taken away by a later clause except by clear and unambiguous language. *Melies* v. *Beatty,* 313 Ill. 418; *Field* v. *Field,* 297 id. 379; *Wiltfang* v. *Dirksen,* 295 id. 362; *Kohtz* v. *Eldred, supra; Roberts* v. *Roberts,* 140 Ill. 345.

The sixth clause devised to Julia A. Capps a fee simple estate without qualification, and unless the ninth clause is clear and unambiguous it cannot be said to reduce the estate given her by the sixth clause. It will be seen from the discussion of the ninth clause that an intention on the part of the testator to cut down the fee given to her is not shown by clear and unambiguous language. That clause cannot be said to be sufficiently clear and unambiguous to meet the requirements of the rule.

We are of the opinion that the chancellor did not err in dismissing the bill, and the decree will therefore be affirmed.

*Decree affirmed.*

Mr. JUSTICE DUNCAN, dissenting.